| 36 | 195 |
| 45 | 137 |

## THE CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY

### v.

## ANTON MERCKES.

*Railroads—Personal Injuries—Defective Appliances—Contributory Negligence—Instructions—Evidence—Fellow-Servant.*

1. The master is not liable for an injury sustained by his servant, where the negligence of the servant or his fellow-servants caused the injury, or materially contributed to it.

2. Where a servant enters into a hazardous employment with knowledge of the hazard, and of the master's negligence in providing safe appliances, and continues therein without objection and without the master's promise to remove the hazard, he can not recover for injuries resulting therefrom.

3. An instruction should be refused where there is no evidence to which it can apply.

4. An instruction that it is the master's duty " to furnish reasonably safe machinery," imposes a higher degree of care than the law requires.

5. An erroneous instruction given for the appellee, is not reversible error, where an instruction to the same effect was given for the appellant.

6. An instruction which ignores material facts which were proven, is erroneous.

[Opinion filed May 28, 1890.]

APPEAL from the Circuit Court of Kane County; the Hon. ISAAC G. WILSON, Judge, presiding.

Messrs A. J. HOPKINS, N. J. ALDRICH and F. H. THATCHER, for appellant.

In the case of Camp Point Mfg. Co. v. Ballou, Adm'r, 71 Ill. 418, the Supreme Court, in discussing this identical question, says on page 419 : "The doctrine upon this subject appears to be, that an employe can not recover for an injury suffered in the course of the business about which he is employed, from defective machinery used therein, after he had knowledge of the defect, and continued his work, it being held that upon becoming aware of the defective condition of such machinery he should desist from his employment; but if he does not do so, and chooses to continue on, he is deemed to have assumed the risks of such defects; at least when he had not been induced by his employer to believe that a change would be made and had not plainly objected." And cases there cited.

"There was also evidence tending to show that appellee had been familiar with the defective condition of the brakes for some time, that he had made no complaint to the officers of appellant on that account, and freely continued to work and ride on the train with full knowledge of whatever peril was thereby occasioned. If this was true, then he can not recover

for any injury he may have received on account of such defective condition of the brakes, for the rule, as stated by eminent text writers, is: 'When an employe, after having the opportunity of becoming acquainted with the risks of his situation, accepts them, he can not complain if he is subsequently injured by such exposure.' " The St. Louis & S. E. Ry. Co. v. Britz, 72 Ill. 256.

The case of the Chicago & Alton Railroad Co. v. Charles Munroe, in the 85th Illinois, page 25, is in point. Mr. Justice Scholfield delivered the opinion of the court, in which he said: "This was an action on the case by appellee against appellant for injuries received by appellee while in appellant's employ as a switchman, in coupling cars. The injury was to the hand, and was occasioned, as appellee says, by reason of the absence of a thimble or iron link in the bumper to the switch engine, to keep the coupling link from running back. There is controversy in the evidence whether the absence of this thimble or link increased the danger of coupling; but assuming that it did, the evidence is that appellee knew of this danger long prior to the time he received his injury, and voluntarily continued to couple cars. He says: 'It was mostly that way all the time. I knew it was not very safe and that there was something the matter with it. I knew all the time, for several years, that the pin went back too far, and made objection to it to Mechlin, but don't know how long before that; Mechlin said he guessed it was as safe as any of them, and I went right on working with it when it was out.' "

The case of Simmons v. Chicago & Tomah Ry. Co., 110 Ill. 340, is, in our opinion, decisive of this question. The opinion was delivered by Mr. Justice Sheldon. Without stating the facts in that case we desire to call your Honor's attention to the principle which covers this class of cases as announced by the Chief Justice in the following language, to be found on page 347:

"In Pennsylvania Co. v. Lynch, 90 Ill. 333, this court said that while there is an implied contract between employer and employe that the former shall provide suitable means, appliances and instrumentalities with which to perform the

labors required of the latter, and also that the latter shall be advised by the former of all the dangers incident to the service to which the latter is not cognizant, 'yet the failure of the employer in this regard furnishes no excuse for the conduct of an employe who voluntarily incurs a known danger. He must himself use due care and caution to avoid injury. If he has full knowledge of all the perils of a particular service, he may decline to engage in it, or require that it shall first be made safe ; but if he does thus enter it, he assumes the risk and must bear the consequences.'

"And in St. Louis & Southeastern Ry. v. Britz, 72 Ill. 261, there was approval of the rule laid down in Wharton on Negligence, Sec. 214, 'that when an employe, after having the opportunity of becoming acquainted with the risks of his situation, accepts them, he can not complain if he is subsequently injured by such exposure.

"To the same effect are Clark v. Chicago, Burlington & Quincy Railroad Company, 92 Ill. 43, and Camp Point Mfg. Co. v. Ballou, 71 Ill. 417. If a servant, knowing the hazards of his employment, as the business is conducted, is injured while engaged therein, he can not maintain an action against the master for the injury merely on the ground that there was a safer mode in which the business might have been conducted, the adoption of which would have prevented the injury. Many cases affirming this principle are cited in the brief of counsel for defendant. It was expressly laid down in Naylor v. Chicago & North-Western Ry. Co., 53 Wis. 166—a parallel case with this in its facts, of an injury from the fall of a bank of earth under which plaintiff was excavating. In Morey v. Lower Vein Coal Co., 55 Iowa, 671 (a case of injury to a miner by the falling of the roof of the mine), it was laid down : ' The true rule is that if the plaintiff knew, or by the exercise of ordinary care might have known, of the unsafe condition of the roof of the mine, and he continued to work in a dangerous place without protest or complaint, and without being induced to believe that a change would be made, he assumed the risk and can not recover.'

"In Hughes v. Winona and St. Peter R. R. Co., 27 Minn.

137, the Supreme Court of Minnesota sanctioned the rule that 'if a man engages in a service with a full knowledge of the manner in which his employer conducts his business, and without objection, he is deemed in law to have assumed and taken upon himself all the risks naturally incident to conducting business in that way, even although it be unsafe.'"

There is still another case which we desire to call your Honor's attention to, and that is the case of Stafford v. The Chicago, Burlington & Quincy Railroad Company, 114 Ill. 244. On page 247 of that volume the Supreme Court say: "We are firmly committed to the principles:

"Third.—If a person, knowing the hazards of his employment, as the business is conducted, voluntarily continues therein, without any promise of the master to do any act to render the same less hazardous, the master will not be liable for any injury he may sustain therein, unless, indeed, it may be caused by the wilful act of the master." (See authorities then cited by the court.) See also C. & E. I. Ry. Co. v. Geary, 110 Ill. 383, and C. & N. W. R. R. Co. v. Donahue, 75 Ill. 106.

Messrs. CHARLES WHEATON and SAMUEL ALSCHULER, for appellee.

C. B. SMITH, J. This was an action on the case brought by appellee against appellant to recover for injuries received by him while in its employ. Appellee recovered a verdict for $5,000, and the court, after overruling a motion for a new trial, gave appellee a judgment on the verdict. Appellant brings the case here on appeal, and assigns for error, 1st, that the verdict is against the law and the evidence, 2d, that the court erred in admitting evidence, and 3d, that the court erred in giving instructions for appellee, and in refusing instructions for appellant. The material facts out of which this suit arises, are briefly as follows: Appellant has large machine shops, and a roundhouse adjacent to each other, and connected by folding doors, in the city of Aurora. The shops and roundhouse in question were and are used for the

purpose of building and repairing locomotive engines. The roundhouse was constructed after the usual manner, with a turn-table in the center, with a large number of tracks leading from the center to the outer side of the building, like the spokes to a wheel. There was an inside circular wall in the roundhouse, parallel to the outside one, leaving a space of about forty feet between the two walls. So much of the tracks as lay between these two walls had the space between them excavated for a depth of about twenty inches for the convenience of the men working under the engines. There was thus left a pit between each of the tracks between the two walls. These pits were so constructed that the stone wall on which the iron rails rested projected toward the center of the pit about four inches beyond the inside of each rail for the purpose of forming a rest and support upon which to lay boards used in bridging the pits.

For the purpose of bridging the pits, the company provided pine boards about a foot wide and about three inches thick, and long enough to fit in cross-wise between the rails. The heavy material used in building and repairing engines was hauled across these tracks to whatever point it was needed by the men upon carts provided and used for that purpose, and over the bridges so made by these loose boards, cut and made for that purpose. The boards were loose and movable to any point where or whenever it became necessary to bridge the pits between the tracks. This method of using and bridging the tracks and transporting material over them had been in constant use for a great many years, and appellee was perfectly familiar with it. At the time of his injury appellee was working with a gang of men whose particular business it was and had been to haul heavy material from the machine shop into the roundhouse with the cart or buggy over these tracks and temporary bridges, to whatever point the material was needed.

On the day appellee was hurt, he, in company with his foreman and five or six other of his co-servants, was directed to haul a heavy iron frame weighing about four thousand pounds, and about twenty feet long, from the machine shop

into the roundhouse, to a point where a locomotive was being built. The frame was loaded on the cart by means of a "crane." The frame was longer than the cart. Appellee and one of his companions and co-servants took the front end of the cart to guide it in the right direction; the foreman and the remainder of the men took their places at the rear end of the cart to push. After passing through the doors into the roundhouse the cart was turned to the left, and it became necessary to cross three of the tracks and bridges to get to the fourth track, where the frame was needed. In crossing the third track the right wheel of the cart ran off the boards forming the bridge, and dropped down into the pit, causing the heavy iron frame to fall off the cart, and in falling it caught appellee's foot, so injuring it that amputation became necessary.

The complaint in the declaration is that appellant did not furnish good hardwood boards and have them bolted together so as to make a safe bridge, and that it allowed the boards used to become old and rotten, and too short, and worn out, etc., so that the work could not be safely done. The plea was the general issue.

There was no proof that the boards were rotten, or too short, nor that they were not strong enough to bear up the cart with its load. The board on which the cart was running did not break. It is certain from the proof that the wheel of the cart was allowed by the men in charge of it, either to run off the boards entirely on the south side, or to run into a crack between the boards, and drop down. The plaintiff himself swears that the bridge on which they were crossing was wide enough. All the witnesses agree that the individual boards were a foot wide and about three inches thick and about four feet long, and that the ends rested on a rock foundation between the iron rails. There is no claim that the company had not furnished all the boards needed. It was a part of the duty of appellee and his co-servants to look after and make these bridges where and when they were needed. The proof shows that during his last employment he had been engaged in this same service of moving heavy material

over these tracks and bridges made with loose boards, for about ten months, and that under a former employment he had worked for appellant about two years in the same employment, using the same appliances in the same manner. Appellee swears that he knew when he entered the employment on both occasions how the work was done, and how the bridges were made, and that he was perfectly familiar with it during his whole employment.

There is no proof that appellant was ever requested to furnish any better or different bridging for the pits, or that any complaint was made by appellee or his co-servants in that respect.

We think it very clear upon plaintiff's own testimony and the testimony of all his witnesses, that there are at least two grounds which bar his right of recovery.

First. It seems to us clear that appellee's injury was the result either of his own or of his co-servant's or their joint carelessness. We can not seriously doubt but that, if plaintiff himself, who was leading and guiding the course of the cart, had watched its course, or the wheels on the boards, he could have so guided it as to prevent its wheels from running off the boards, or running between them. But from his own testimony he was paying no attention to them, but was looking forward, and pulling the cart.

Those of his fellow-servants who were behind and pushing the cart were equally negligent. It seems clear that any of them could have seen where the wheels were running, if they had paid the slightest attention. It would have required no extraordinary care or skill to have kept the wheels of this cart substantially in the middle of a twelve inch plank, in going a distance of only four feet, and it was an act of gross carelessness for the men in charge of that cart in broad day-light with its heavy load, to allow it to run off its planks, and drop into the pit below. The law is too well settled in this State to require argument or authority to show that there can be no recovery had by one whose own gross negligence or that of his co-servants in the same line of employment, has caused the injury, or materially contributed to it.

Second. If the company was negligent in not providing safe bridging for the excavations between the tracks, as alleged in the declaration, or if the work was necessarily and ordinarily hazardous, as carried on in the shops of appellant, and appellee continued in the service with full knowledge of the alleged negligence of the company, or of the hazardous character of his daily work, without any promise of the company to remedy them, then he can not recover for an injury caused by such negligence of the company, or from the hazardous character of the work. In case of the alleged negligence of the defendant, long persisted in by the defendant, appellee is presumed to have acquiesced in it, and taken his chances. In case of the ordinary and usual hazards of the employment, appellee is presumed to have contracted with reference to them. These principles have been held to be the law by a long line of decisions in this State, and can not be regarded as open questions. Camp Point Mfg. Co. v. Ballou, 71 Ill. 417; Rail Road Co. v. Britz, 72 Ill. 257; Simmons v. Railway Co., 110 Ill. 34; Pennsylvania Co. v. Lynch, 90 Ill. 333.

The evidence in this case brings appellee clearly within the rule announced. If there was carelessness or negligence on the part of defendant or hazard in the nature of his employment, he knew all about both, and had known it for nearly three years. No promise was ever made by the company to change the methods of doing the work, or to do anything to make the work less hazardous, or to make any other kind of bridging for the pits.

Appellant insists that the court erred in giving several instructions for appellee, and in refusing some offered by appellant. We think this complaint is well grounded.

The third instruction given for plaintiff declares that "a person in charge of and directing a gang of men, with power to give them orders and exact obedience, is not in law a fellow-servant, * * * with the men under his charge." Whether this instruction announces a correct rule of law in the abstract is not necessary to determine, but we think it had no proper place in the case because there was no evidence to which it could properly apply. There is no evidence to show

that the foreman gave any directions or orders about how this load should be moved, except to say where it was pushed over one of the rails, "Give it to her, boys." This instruction was well calculated to mislead the jury and ought not to have been given.

The fourth instruction was erroneous, because it informed the jury that it was the duty of the company to furnish reasonably safe machinery, etc. This would make the company a guarantor of the reasonable fitness and safety of its machinery in all cases. This is a higher degree of care than law requires. The company was bound only to use a high degree of care in providing safe machinery and appliances for its employes and servants.

In Camp Point Mfg. Co. v. Ballou, 71 Ill. 417, it is held that the law only imposes upon the employer the obligation to use reasonable and ordinary care and diligence in providing suitable and safe machinery. Shearman and Redfield on Negligence, Secs. 87, 92; North Chicago Rolling Mills v. Monka, 4 Ill. App. 664. We should not reverse for this error if there were no other, because the court announced the same rule of law to the jury in defendant's seventh instruction at defendant's request, and defendant can not complain of an error committed also by itself.

The fourth instruction was also erroneous because it entirely ignored the fact that plaintiff knew all about the alleged negligence of the defendant and of the hazard of his work, and continued in this employment with full knowledge of both without objection, and without promise on the part of the company to remove the hazard or correct the negligence. The instruction told the jury that if they believed the defendant had been negligent in respect to the matters alleged in the declaration, then the plaintiff could recover, notwithstanding the uncontradicted facts showed that plaintiff could not recover under the cases above cited. This was error.

We think the court erred in refusing to give the jury the first, second, fourth, fifth, sixth and seventh instructions asked by the defendant. They announce a correct rule of law and

are in harmony with the cases we have before cited, and were applicable to the facts in the case, and it was error to refuse them.

For the errors above pointed out the judgment is reversed.

*Judgment reversed.*

As a result of the finding of this court of the facts differently from that found in the court below, we find the following facts to be incorporated in the judgment of this court:

1st.  The appellant was not guilty of either of the several acts of negligence charged in either count of the declaration, in manner and form therein charged, and we further find that there is no evidence in the record tending to show that the appellant was guilty of the negligence charged in either count of the declaration, in manner and form as therein charged. We further find that the injury to defendant complained of in the declaration was caused and received by him on account of his own negligence, and that of his fellow-servants in the same line of employment with him.