UNION STOCK-YARDS COMPANY V. EDWARD GOODWIN.

FILED DECEMBER 8, 1898. NO. 8489.

1. **Master and Servant: INSPECTION OF APPLIANCES.** A person or corporation using the cars or appliances of another person or corporation, as to its employés, uses such cars or appliances charged with the same duty as to inspection as if they were his or its own.

2. ———: ———: **RISKS OF EMPLOYMENT.** An employé who, under the instructions of his master, uses the car or appliance in his master's possession belonging to some other person or corporation thereby assumes only the same risk that he would if the car or appliance belonged to his employer.

3. ———: ———. The undisputed facts as to the condition of a defective car brake stated, and *held* that the jury was justified in inferring therefrom that a reasonably careful inspection of the brake by a competent inspector would have revealed its defective condition, although the defect was of so latent a character as not to be discernible at a glance by one inexperienced in brake construction or inspection.

4. **Evidence: INFERENCES.** A jury has the right to draw rational, reasonable, and logical inferences from facts proved or admitted.

5. ———: IRRELEVANCY: JUDGMENT. A judgment lacks evidence to support it which rests solely on testimony irrelevant under the issues made by the pleadings.

6. **Master and Servant:** RULE OR CUSTOM: RISKS OF EMPLOYMENT: PLEADING. That an employé knew of a rule or custom of his employer, by which his business was conducted, but nevertheless continued in his service, and thereby assumed the risk of injury from a defective appliance furnished him for .use, is affirmative matter of defense and must be pleaded.

7. ———: DEFECTIVE APPLIANCES: RISKS OF EMPLOYMENT. A brakeman who goes upon a car to set a brake thereof, knowing that the car has not been inspected, does not for that reason assume the risk of the brake being defective, he not knowing that the brake is out of order, the defect not being obvious, and it not being his duty to inspect cars or brakes, or to handle cars known or supposed to be defective.

8. ———: ———: ———. An employé assumes the risk arising from defective appliances used, or to be used by him, or from the manner in which a business in which he is to take part is conducted, when such risks are known to him or are apparent and obvious to persons of his experience and understanding. *Dehning v. Detroit Bridge & Iron Works*, 46 Neb. 556, followed.

9. ———: ———: ———. No defect being obvious, an employé has the right to assume that a tool or appliance furnished him by his employer is reasonably safe and fit for the purposes for which he is required to use it.

10. ———: INSPECTION OF APPLIANCES: NEGLIGENCE. .To inspect a car brake may require more than a simple glance at it. Such a test must be applied as would probably reveal a defect if one existed; and the neglect of a car inspector to make such a test is evidence of negligence.

11. **Evidence:** CUSTOM: BOOK OF RULES: REBUTTAL. Certain rulings of the trial court on the admission of rebuttal evidence examined and sustained.

12. **Master and Servant:** INJURY TO EMPLOYÉ: CONTRIBUTORY NEGLIGENCE: HARMLESS ERROR. An instruction that "contributory negligence is based upon, and presupposes, the negligence of the defendant, and cannot exist without some negligence on defendant's part," criticised, but, in view of the issues, *held* not prejudicial, if erroneous.

ERROR from the district court of Douglas county. Tried below before SLABAUGH, J. *Affirmed.*

*I. R. Andrews* and *Frank T. Ransom,* for plaintiff in error.

*James P. English, contra.*

RAGAN, C.

The Union Stock-Yards Company is a state corporation. It owns and operates at the city of South Omaha, in connection with its business of lotting, feeding, and caring for stock in transit, a system of railroads connecting its yards with various packing-houses located at that place, and which railroads connect the packing-houses and yards with the terminals of the various railways centering at that point. The switching and transferring of cars from the railway termini to the stock-yards and packing-houses is carried on by the stock-yards company with its own engines, crews, and over its own tracks. On April 10, 1895, the stock-yards company had in its employ one Edward Goodwin, who was a brakeman. On this date Goodwin and the crew of which he was a member were ordered to bring from the Burlington road, or its terminus, six cars of cattle, and set the cars out at the stock-yards chute for the purpose of unloading. One of the cars in this train was a Hammond refrigerator car equipped with an ordinary hand-brake. Fitted horizontally on the top of the brake-rod or shaft, extending above the top of the car, was an iron wheel used by brakemen for the purpose of setting the brake attached to the lower end of the brake-rod by a chain. This horizontal iron wheel was fastened to the brake-rod by a nut screwed on the end of the shaft. Goodwin, while in the discharge of his duties as such brakeman, in switching out these six cars of cattle, climbed on this Hammond refrigerator car, and while the six cars were moving he attempted, as was his duty, to set the brake. The nut which should have held the horizontal wheel firmly to the brake-rod came off. The wheel came off,

and Goodwin was thrown to the ground and severely and permanently injured. The refrigerator car was not the property of the stock-yards company. The stock-yards company had not caused it to be inspected before it took it into its possession, and ordered its employés, among whom was Goodwin, to use it. The nut did not part from the brake-rod because of its being worn out, nor because of any defect in any part of the brake-rod or the nut itself. The end of the brake-rod and the nut which slipped therefrom were both perfectly sound, but the nut was too large for the brake-rod. The screw-threads in the nut did not fit the screw-threads on the brake-rod, and the opening in the nut was so large that it could be pushed down over the threads on the end of the brake-rod by one's fingers. A mere glance or casual look at the nut on the brake-rod would not disclose to one inexperienced in the construction of brakes that the brake was defective in construction and dangerous because of the size of this nut. In the district court of Douglas county Goodwin sued the stock-yards company for damages for his injury; alleged the improper construction of this brake and his ignorance of its defect; that the stock-yards company negligently neglected to have this car and brake inspected before taking it into its possession and causing him to use it; that a careful inspection of the brake and car by the inspectors of the stock-yards company would have revealed the defect in the brake; and that the neglect of the stock-yards company to so cause the brake and car to be inspected was the proximate cause of his injury. He had a judgment for $10,350, to review which the stock-yards company has filed here a petition in error.

1. As already stated, the car on which was the defective brake that caused Goodwin's injury was not the property of the stock-yards company. This fact, however, is no defense whatever for the stock-yards company in this case. A person or corporation using the cars or appliances of another person or corporation, as

to its employés, uses such cars or appliances charged
with the same duties as to inspection as if the cars or
appliances were its own; and the employé who, under
the instructions of his master, uses a car or appliance in
his master's possession belonging to some other person
or corporation thereby assumes only the same risk that
he would if the car or appliance belonged to his em-
ployer. (*Gottlieb v. New York, L. E. & W. R. Co.*, 100 N.
Y. 462, 3 N. E. Rep. 344; *Goodrich v. New York C. & H. R.
R. Co.*, 22 N. E. Rep. [N. Y.] 397; *Baltimore & P. R. Co.
v. Mackey*, 157 U. S. 73; *Atchison, T. & S. F. R. Co. v. Pen-
fold*, 45 Pac. Rep. [Kan.] 574; *Missouri P. R. Co. v. Bar-
ber*, 44 Kan. 612, 24 Pac. Rep. 969; *Atchison, T. & S. F.
R. Co. v. Seeley*, 54 Kan. 21, 37 Pac. Rep. 104.)

2. A contention of the stock-yards company is that in
order for Goodwin to recover he was compelled to show
by a preponderance of the evidence that a reasonably
careful inspection would have disclosed the defect in
the brake which caused his injury, and that he failed
to make such proof. We have already stated the actual
condition of this brake at the time it was used by Good-
win, in what manner the brake was defective, and the
latent character of this defect to a person inexperienced
in the construction of brakes who simply looked or
glanced at it. The argument here is that from these un-
disputed facts the jury were not warranted in inferring
that a careful inspection of this brake and car by the
inspectors of the stock-yards company would have re-
vealed the brake's defective condition. We do not agree
to the contention. On the contrary, we are persuaded
that from the undisputed facts in reference to this de-
fective brake the jury were justified in drawing the in-
ference that a careful inspection of the brake and car
would have revealed the defect. It by no means follows
that because a person inexperienced in the construction
of a brake, seeing this one, would not have observed the
defect that an inspector inspecting this car would not
by the exercise of ordinary care have discovered the de-

fect.   An ordinary railway brakeman simply observing a car wheel might conclude that it was sound, while the tap of the inspector's hammer would reveal that the wheel was broken.   The facts that the brake was improperly constructed, and therefore defective and dangerous, and that this defect was not apparent at a glance stood admitted.   It was a reasonable and logical deduction from these admitted facts that had the brake been inspected by trained inspectors the defect would have been discovered; and such logical and reasonable deduction and inference the jury had the right to draw. (*Kilpatrick v. Richardson*, 40 Neb. 478; *Kearney Canal & Water Supply Co. v. Akeyson*, 45 Neb. 635.)

In *Chicago, B. & Q. R. Co. v. Wymore*, 40 Neb. 645, Wymore's intestate was killed in a collision between two trains.   One train was standing on a siding, and a train on the main line collided with it because the switch-key in possession of the brakeman failed to open the switch-lock; and it was held that the jury might properly infer from these facts that the railway company was guilty of negligence in sending out a brakeman equipped with a key which it was not known would properly control all the locks which he might have occasion to use. IRVINE, C., speaking for the court, said: "The evidence showed without contradiction that this key would not unlock this particular lock, and there was no evidence tending to show that any test had been made of it before the accident, or that any precautions had been taken to ascertain its safety."

In *Union Stock Yards Co. v. Conoyer*, 41 Neb. 617, Conoyer's intestate was last seen examining a train that had been made up ready to move.   His body was found between the rails on the track occupied by the train. The second car from the rear was found derailed, caused by material on the track, and the train had moved some distance after the derailment, dragging the body of Conoyer's intestate with it.   There was no other proof of negligence.   The present chief justice speaking for the

court of this evidence said: "Constitute an array of physical facts and set of circumstances which fully warranted the trial judge in submitting the case to the jury for their determination; and finding as the jury did, they would not be called upon, at any point in the case entering into such finding, to draw any inferences which would necessarily be violative of the rule of law which prescribes that 'inferences must be drawn from facts proved;' nor do we think that the verdict rendered necessarily involved any speculation and conjecture other than reasonable and fair inferences in view of all the facts and circumstances proved on the trial as surrounding the killing." ·

Other instructive cases on the subject under consideration are *Spicer v. South Boston Iron Co.*, 138 Mass. 426; *Missouri P. R. Co. v. Barber*, 24 Pac. Rep. [Kan.] 969; *Missouri, K. & T. R. Co. v. Chambers*, 43 S. W. Rep. [Tex.] 1090.

3. It is next insisted that the judgment of the district court is erroneous because the evidence shows that the stock-yards company had a "well known rule," "custom and manner" of doing business, namely, that all trains in which there were cars of live stock were taken to the chute for the purpose of unloading the stock before the stock-yards company inspected the cars; and that Goodwin continued in the service of the stock-yards company with full knowledge of this rule or custom, and thereby assumed the risk of the defect which caused his injury. Assuming, without deciding, that the evidence in behalf of the stock-yards company established the existence of such well known rule and custom, and that Goodwin, with knowledge thereof, remained in the service of the company without objection, the contention is untenable, for the reason that no such defense as this was pleaded by the stock-yards company. No such an issue was made by the pleadings in the court below, and the evidence, and all the evidence, introduced which tended to show the existence of such rule or custom was irrelevant.   A

judgment whose sole support is evidence which did not tend to prove or disprove any issue made by the pleadings in the case could not stand. (*McGavock v. City of Omaha*, 40 Neb. 64.)

And this disposes of another contention of the stock-yards company that the court erred in refusing to submit by its instructions this defense to the jury. What the stock-yards company did plead in the court below was that before Goodwin went upon the refrigerator car and attempted to set the brake thereon he knew that such car had not been inspected. But this is not a plea that Goodwin assumed the risk of the defect which injured him by continuing in the service of the stock-yards company and working upon its trains in pursuance of a well known rule and custom that the cars were to be unloaded before being inspected.

4. Another contention is that Goodwin knew at the time he went upon the refrigerator car and attempted to set the brake thereon that the car had not been inspected; and therefore, in attempting to set the brake on that car, he assumed the risk of its being defective. In support of counsel's contention numerous cases* are cited, one of which is *Arnold v. Delaware & Hudson Canal Co.*, 125 N. Y. 15, 25 N. E. Rep. 1064. In that case Arnold was injured while attempting to couple two cars, one of which had a broken draw-head; and the negligence charged to the company was the presence of that defect. It appeared from the evidence that the broken draw-head was obvious; and further it appeared that Arnold's duty was, as an employé of the company, to

*Hughes v. Winona & S. P. R. Co.*, 27 Minn. 137; *Green v. Cross*, 79 Tex. 130; *Beckman v. Consolidated Coal Co.*, 57 N. W. Rep. [Ia.] 889; *Schaible v. Lake Shore & M. S. R. Co.*, 56 N. W. Rep. [Mich.] 565; *Sullivan v. India Mfg. Co.*, 113 Mass. 396; *Chicago, B. & Q. R. Co. v. Merckes*, 36 Ill. App. 195; *Camp Point Mfg. Co. v. Ballou*, 71 Ill. 417; *St. Louis & S. R. Co. v. Britz*, 72 Ill. 257; *Pennsylvania Co. v. Lynch*, 90 Ill. 333; *Stafford v. Chicago, B. & Q. R. Co.*, 114 Ill. 244; *Simmons v. Chicago & T. R. Co.*, 110 Ill. 340; *Greenleaf v. Illinois C. R. Co.*, 29 Ia. 14; *Chicago & N. W. R. Co. v. Donahue*, 75 Ill. 106.

take out cars which were damaged or supposed to be damaged from trains and place them on track for repairs. Under these circumstances the court held that the company was not liable to Arnold for his injury. We think the holding in that case was correct and that it is justified on two grounds: (1.) The defect which caused Arnold's injury was an obvious one. That the draw-head of the car was broken was discernible from a casual glance. (2.) Arnold's business was to handle cars known or supposed to be out of repair. By engaging in this business he assumed the risk of receiving an injury from a defective car. He was bound to know or presume that the cars which he was handling were defective and to be on his guard. But the case is not in point here. It was no part of Goodwin's duty to handle defective cars. It was not his duty to inspect a car before using it. That was a duty which the stock-yards company owed its employés. (*Baltimore & P. R. Co. v. Mackey*, 157 U. S. 73.) And though Goodwin knew this car had not been inspected, he did not know that it was out of order. The defect was not obvious, and he therefore had the right to assume that the brake on this car was reasonably safe and fit for the purposes for which it was intended. (*Atchison, T. & S. F. R. Co. v. Penfold*, 45 Pac. Rep. [Kan.] 574; *Chicago, B. & Q. R. Co. v. Kellogg*, 54 Neb. 127.) Among the other cases cited by counsel in support of their contention are *Kelley v. Chicago, M. & S. P. R. Co.*, 53 Wis. 74, *Flanagan v. Chicago & N. W. R. Co.*, 45 Wis. 98, *Naylor v. Chicago & N. W. R. Co.*, 53 Wis. 661, and *Abbott v. McCadden*, 81 Wis. 563, but not one of them, we think, sustains the contention that a brakeman who goes upon a car to set a brake, knowing that the car has not been inspected, thereby assumes the risk of the brake being defective, he not knowing that the brake was out of order, the defect not being obvious, and it not being his duty to inspect cars or brakes, or to handle cars known or supposed to be defective. On the other hand, contrary to the conten-

tion of the plaintiff in error, the doctrine of this court is that "an employé assumes the risk arising from defective appliances used or to be used by him, or from the manner in which a business in which he is to take part is conducted, when such risks are known to him or are apparent and obvious to persons of his experience and understanding." (*Dehning v. Detroit Bridge & Iron Works*, 46 Neb. 556; *Chicago, B. & Q. R. Co. v. McGinnis*, 49 Neb. 649; *Malm v. Thelin*, 47 Neb. 686; *Kearney Electric Light Co. v. Laughlin*, 45 Neb. 390; *Missouri P. R. Co. v. Baxter*, 42 Neb. 793.)

5. The next contention is that the court erred in permitting Goodwin to introduce in evidence a book known as the "Code of Rules" adopted by the Master Car Builders' Association. A number of witnesses called by the stock-yards company had testified, presumably as experts, that in their opinion a careful inspection of this brake by duly qualified car inspectors would not have revealed its defective condition. Each of these witnesses on cross-examination said in substance that what he meant by a reasonably careful inspection was such an inspection and examination as was required by this "Code of Rules." The code was identified by the witnesses as being the one issued by the Master Car Builders' Asociation, and the one in force in the month of April, 1895, in the state of Nebraska, and the one under which the inspectors of cars operated, and by which they were governed. When Goodwin came to put in his rebuttal testimony he offered in evidence this "Code of Rules." It is first insisted by counsel for the stock-yards company that the court erred in permitting the book to go in evidence because counsel had not had an opportunity to cross-examine his witnesses with reference to the contents of the book. We confess we do not see the force of this objection. When the book was offered in evidence the case had not closed, and we do not know from the record why counsel for the stock-yards company did not recall their witnesses who had iden-

tified the book and ask them such questions as to its contents as they desired. Counsel say that their witnesses who had identified this book had left the witness stand at the time this book was offered in evidence. This of course is true, but it does not necessarily follow from that that they could not have recalled them. The very fact that counsel for Goodwin, while cross-examining the stock-yards company's witnesses, had them identify this book was sufficient notice to counsel for the stock-yards company that Goodwin would probably use this book in evidence on rebuttal.

A second contention is that the book itself was incompetent testimony. We do not think it was. The principal issue litigated on the trial was whether a careful inspection would have revealed the brake's defective condition, and the stock-yards company was permitted to bring experts upon the stand and have them testify that in their opinion a careful inspection of this brake according to the Code of Rules of the Master Car Builders' Association would not have revealed its defective condition. Now the book complained of is entitled "A Code of Rules Governing the Condition of and Repairs to Freight Cars," etc., and under the head of "Brakes in Bad Order" the very first rule is that a brake shall be considered in bad order unless the brake wheel is secured to the shaft with a properly fitted nut. This code of rules then tended to show that it was the duty of an inspector, when inspecting a brake, to ascertain if the nut was properly fitted to the brake-shaft. In other words, it tended to rebut the expert testimony of the stock-yards company's witnesses that a careful inspection of the brake would not have revealed its defect. But this evidence went further. One, if not more expert witnesses, had been permitted to testify for the stock-yards company that a reasonably careful inspection of this brake by a car inspector consisted in the inspector looking at and observing the wheel and the nut, but that such an inspection did not require the inspector

to take hold of the wheel for the purpose of ascertaining if it would come off. If an inspector is to comply with the Code of Rules, then he is to ascertain by inspection whether the brake-wheel is secured to the brake-shaft with a properly fitted nut. Within the meaning of this rule to inspect a brake means more than to simply look at it. An inspector may not be required to take hold of a wheel and try to pull it off; but to inspect it he must know for a certainty whether the wheel is securely fastened to the brake-shaft, and for ascertaining that fact he must use such methods or appliances as will produce an effective test, whether the appliance be his hand, a monkey-wrench, or some other equally efficacious instrument. We think this testimony was perfectly competent.

6. On the trial the district court on its own motion gave to the jury among others the following instruction: "Contributory negligence is based upon and presupposes the negligence of the defendant, and cannot exist without some negligence on defendant's part. In determining whether or not plaintiff was guilty of contributory negligence, you must take into consideration all of the facts and circumstances in the case as detailed by the evidence, and if from all the evidence you find that the plaintiff did not exercise usual and ordinary care, when by the exercise of ordinary and usual care he might have avoided the injury complained of, then, if you so find, he would be guilty of contributory negligence, and he could not recover." The criticism of this instruction is that by it the court told the jury in effect that the stock-yards company admitted it had been guilty of negligence. It stood admitted by the pleadings that the stock-yards company had not caused this car to be inspected before ordering its employés to use it. The neglect to inspect this car was evidence of negligence on the part of the stock-yards company. One of the defenses interposed by the stock-yards company to Goodwin's action was that his injury was the result of his

own negligence, or his contributory negligence. Technically then the instruction did not misinform the jury as to the status of the issues in the case. We doubt very much the propriety of ever giving such an instruction as this, but we are persuaded that the stock-yards company was not prejudiced by the giving of this instruction, if it be conceded erroneous. We find no error in the record and the judgment of the district court is

AFFIRMED.