### 2991.    CENTRAL OF GEORGIA RAILWAY CO. *v.* MACON RAILWAY & LIGHT CO.

1. Where one of the parties to a pending action claims that a third person is liable over to him in the event he loses in the suit, and vouches that person by notifying him of the pendency of the suit and giving him opportunity to appear therein, the judgment in that suit is conclusive on the person vouched as to the correctness of the judgment, but is not conclusive of the fact that there is such a relationship between the person vouched and the person vouching as that a right of action over exists.

2. A right of action over against some third person for contribution or indemnity in favor of the party cast in a prior suit may arise from relationships either contractual or non-contractual.

3. Generally speaking, one of two or more joint wrong-doers has no right of action over against those connected with him in the tort for either contribution or indemnity where he alone has been compelled to satisfy the damages resulting from the tort. In some cases two or more persons may be liable as joint wrong-doers, so far as concerns a person injured by a tort, and yet as among themselves the tort may not be joint; and in some cases of this kind a right of action over may exist in favor of the one who has been compelled to pay the damages, as against another who as between them was the sole author of the wrong.

(*a*) Ordinarily, if one person is compelled to pay damages because of negligence imputed to him as the result of a tort committed by another, he may maintain an action over for indemnity against the person whose wrong has thus been imputed to him; but this is subject to the proviso that no personal negligence of his own has joined in causing the injury.

4. The negligence of two persons may be truly concurrent, even as among

themselves, though the negligence of the one began antecedently to the negligence of the other, and may, in a greater or less degree, have induced it; and in such cases no right of contribution or indemnity exists between the wrong-doers. Where two separate persons owe to a third person the same concurrent duty as to a particular thing, and, by reason of the negligent failure of each and both of them to perform that duty, the third person is injured, and he sues only one of those who owed him the duty (basing his right of action solely upon the tortious state of affairs brought about by this joint·and common neglect of duty), and recovers damages, no action over arises in favor of the person thus subjected to the sole liability, against the other person who owed the same duty.

5. Where a right of action over against a third person is asserted by ·the defendant in a prior tort action who has been compelled by the judg·ment thereon to pay damages, the plaintiff in the second action is estopped from showing that the causes alleged in the prior action were not the true causes of the damage. The only theory on which the second suit in such a case can proceed is that the judgment in the first case was based on a correct finding of the facts, and that that state of facts, taken in connection with the relationship of the parties to the second suit as to that state of facts, is such as to give an action over in favor of the one as against the other.

DECIDED JUNE 7, 1911.  REHEARING DENIED SEPTEMBER 11, 1911.

Action for damages; from city court of Macon—Judge Hodges. September 20, 1910.

Minor, an employee of the Central of Georgia Railway Company, was killed through an electric shock which he received while attempting to unload coal from a chute into a locomotive tender. The apron of the chute was to be lowered by a steel cable which he caught hold of. An electric wire leading to an arc lamp had been fastened upon the chute. This wire sagged against the cable, and the insulation had become worn or was originally inadequate, so that the current leaked from the electric wire to the cable, and when Minor, standing on the engine tender, reached and touched the cable to lower the apron of the chute, he, completed the circuit, and was killed. His widow sued the railway company on account of the homicide, and recovered a judgment, which, on review, was sustained by this court. See *Central Ry. Co. v. Minor*, *2 Ga. App.* 804 (59 S. E. 81), where a somewhat fuller report of the facts is given. As stated by the opinion in that case, "whether the wires were unsafely located in the beginning, whether the railroad company by ordinary care could have discovered this fact, whether an inspection, reasonable under all the circumstances, would have disclosed the probability of danger, were the questions involved; and as to these

things there was evidence pro and con." While that suit was pending the railway company furnished to the Macon Railway & Light Company a copy of the plaintiff's petition, and requested it in writing to defend the action, on the ground that, if any liability existed, the railway company had a right of action over against the light company. The present action was brought by the railway company against the light company to recover the amount of the judgment that the railway company was forced to pay, together with costs and expenses incurred in connection with the defense of the suit. On the trial it appeared that, while the arc lamp and the wires leading thereto were located on the railway company's property and were used by it for the lighting of its switchyards, they were erected by the light company and belonged to it. The contract between the two companies was in evidence, and provided, so far as is here material, that the light company would furnish the lamps and the current for the lighting agreed on, at a specified price. The railway company's agent designated the places where the lights were to be placed, and the light company's employees placed them there. The railway company's agent made some protest against the placing of the light wires on the coal chute, but, after some assurance from one of the electricians of the light company as to the safety of so doing, allowed it. The evidence authorized a finding that the wires were negligently placed upon the coal chute; also that there had been negligence in inspecting them, and in allowing the insulation to become worn; also, that the light company had allowed its circuit to become "grounded" in some other place, whereby contact with the wire was rendered especially dangerous. The record of the former suit was introduced in evidence and the vouching of the light company regularly shown. The court granted a nonsuit, and on exception to this judgment the case reached this court.

*R. C. Jordan,* for plaintiff.

*Guerry, Hall & Roberts,* for defendant.

POWELL, J. (After stating the foregoing facts.)

1. Codifying a common-law doctrine, the Civil Code (1910), § 5821, declares: "Where a defendant may have a remedy over against another, and vouches him into court by giving notice of the pendency of the suit, the judgment rendered therein will be conclusive upon the party vouched, as to the amount and right of the

plaintiff to recover." The steps necessary to vouch the present defendant were regularly taken, and the judgment against the present plaintiff was duly rendered against it as defendant in the former suit, so in the present case the sole question is, "Does the present plaintiff have a remedy over against the present defendant?" The former judgment does not answer this question.

2. The right of one who has had a judgment rendered against him to maintain an action over against a third person may arise from relations contractual or non-contractual existing between the two. The duty to indemnify may arise from some express or implied agreement to indemnify, or may arise by operation of law, independently of contract. The natural, legal, and proximate result of a tort committed by A. may be to subject B. to legal liability and to a necessity to respond in damages to some third person, say C., and in some such cases B., when subjected to liability by C., may recover from A. the amount of the damage which has thus been caused to him. Familiar examples of contractual right of action over are to be found in cases where the loser in the first action holds the warranty of a third person or holds his agreement to indemnify.

The present case proceeds ex delicto. The petition alleges no warranty or contract for indemnity, but bases the right of the railroad company to recover over against the light company exclusively upon acts of negligence—negligent installation of the wires, negligent failure to insulate them properly, negligent failure to make adequate inspections, the negligent allowing of the electric circuit to become grounded. Hence we must determine whether through one or more of these alleged torts there arose in favor of the railway company a right of action over against the light company on the theory that the loss, which the railway incurred through its employee's widow establishing liability against it on account of her husband's death, can be considered as damages naturally, legally, and proximately flowing to the railway company from the light company's wrongful acts. To state it somewhat differently, was the railway company in the first suit subjected to liability, not for its own immediate wrong, but solely because of the wrong of the light company?

3. In approaching the consideration of the questions just proposed, it is well to notice at the outset a doctrine too well settled to admit of doubt or to require the citation of authority. It is the

general rule that, where a person has been damaged by the concurrent negligence of two or more joint wrong-doers, he may sue either one or more, or all of them, and that if he sues only one or only a part of them, those so subjected to liability can claim no contribution from those not sued; and in such cases it is unquestionable that no right of action over ordinarily exists. But there may be cases in which a person who has suffered loss or damage may have the right to sue two persons as if they were joint wrong-doers, without their being, as among themselves, joint wrong-doers. A.'s servant, B., negligently injures C. in the performance of A.'s work. From C.'s standpoint, A. and B. are joint wrong-doers, but as among themselves B. is the wrong-doer and A. is subjected to liability merely by the doctrine of respondeat superior; so that, if C. sues A. alone and compels him to pay the damage, A., in turn, may compel B. to indemnify him for the loss. So in this class of cases it is always relevant to inquire, "Whose wrong really caused the damage?" For, if it is a joint wrong as between those whom the person originally damaged might have held liable, no right of contribution or indemnity survives to the one whom the person damaged has subjected to the sole liability. Thus, although, as stated above, a master may sometimes have a right of action over against a servant because of whose negligent act he has been subjected to liability to a third person, this is not the case where the master's own negligence has concurred with that of his servant in creating the liability. Generally speaking, a right of action over in such cases exists only where the negligence of him who has been compelled to satisfy the damages is imputed or constructive only, and the negligence of him against whom the remedy over is asserted was actual or more immediately causal.

4. The very able argument of counsel for the plaintiff in error and the examination of the many cases cited in his excellent brief have convinced us that the widow of the decedent, Minor, could have sued the light company in the first instance, and have recovered for the homicide. That company was using for its purposes a dangerous current of electricity at a place where the decedent and other employees of the railway company were expected to be, and from this fact arose the duty upon the light company of exercising due care to prevent the current's escaping and doing damage. The breach of this duty resulting in the homicide would have given the

widow a right of action against the light company. But the fact that the light company owed the decedent this duty, and that a breach of this duty· caused the damage, does not necessitate the holding that its wrong alone is to be considered as the proximate cause of the injury, either as between the decedent's widow and the two companies involved in the case, or as between the two companies themselves. After carefully considering the facts· of the case in the light of numerous authorities on the general question, the case looks thus to us: When the light company installed these dangerous appliances in the defendant's switchyards, they became the instrumentalities of two businesses; the light company's business of furnishing light and the railway company's business of making up and operating trains. The decedent who was employed to work in these yards sustained such a relationship to this matter, which primarily and contractually concerned only the two companies, as that the law imposed upon both companies a joint and several duty owing to him to see that these wires should be kept in reasonably safe condition. As to him, the light company had no right ·to install these dangerous wires or to maintain them, and the railroad company had no right to allow them to be installed and maintained as a part of its plant, except on· the condition, applicable alike to each of the companies, that reasonable care would be taken to safeguard the decedent from injury through them. The judgment in the former case was, as against the plaintiff in the present case, a conclusive finding of one or more of the following facts: that it allowed the wires to be installed in a negligent manner in the first instance; that it was neglectful in allowing them to remain where they were, after the insulation had worn away; that it was neglectful as to inspection; and that one or more of these things was the proximate cause of the homicide. The railway company does not sue the light company in the present case for the breach of any contract on its part to install the wires in a proper manner, or to maintain them or to inspect them, but sues·because that company was guilty of substantially the same tortious delinquency as it itself had committed. Thus viewed, the case seems to be on all fours with the case of Union Stockyards Co. v. C., B. & Q. R. Co., 196 U. S. 217 (25 Sup. Ct. 226, 49 L. ed. 453). In that case the circuit court of appeals certified to the United States Supreme Court the following question: "Is a ·railroad company which delivers a

car in bad order to a terminal company that is under contract to deliver it to its ultimate destination on its premises for a fixed compensation, to be paid to it by the railroad company, liable to the terminal company for the damages which the latter has been compelled to pay to one of its employees on account of injuries he sustained while in the customary discharge of his duty of operating the car, by reason of the defect in it, in a case in which the defect is discoverable upon reasonable inspection?" Accompanying the question, and for the purpose of illustrating it, was a statement of the facts as follows: "The plaintiff, the stockyards company, is a corporation which owns stockyards at South Omaha, Neb., railroad tracks appurtenant thereto, and motive power to operate cars for the purpose of switching them to their ultimate destinations in its yards from a transfer track which connects its tracks with the railways of the defendant, the Burlington Company. The Burlington Company is a railroad corporation engaged in the business of a common carrier of freight and passengers. The defendant places the cars destined for points in the plaintiff's yards on the transfer track adjacent to the premises of the plaintiff, and the latter hauls them to their points of destination in its yards for a fixed compensation, which is paid to it by the defendant. The plaintiff receives no part of the charge to the shipper for the transportation of the cars, but the defendant contracts with the shipper to deliver the cars to their places of ultimate destination in the plaintiff's yards, and receives from the shipper the compensation therefor. The defendant delivered to the plaintiff upon the transfer track a refrigerator car of the Hammond Packing Company, used by the defendant to transport the meats of that company, to be delivered to that company by the plaintiff in its stockyards. This car was in bad order, in that the nut above the wheel upon the brake staff was not fastened to the staff, although it covered the top of the staff, and rested on the wheel as though it was fastened thereto, and this defect was discoverable upon reasonable inspection. The plaintiff undertook to deliver the car to the Hammond Company, and sent Edward Goodwin, one of its servants, upon it for that purpose, who, by reason of this defect, was thrown from the car and injured while he was in the discharge of his duty. He sued the plaintiff and recovered a judgment in one of the district courts of Nebraska for the damages which he sustained by his fall, on the ground that it

was caused by the negligence of the stockyards company in the discharge of its duty of inspection to its employee. This judgment was subsequently affirmed by the Supreme Court of Nebraska (Union Stockyards Co. v. Goodwin, 57 Neb. 138, 77 N. W. 357), and was paid by the plaintiff." The Supreme Court of the United States, conceding for the sake of the argument that the injured employee could have sued either company or both of them, said: "The case then stands in this wise: The railroad company and the terminal company have been guilty of a like neglect of duty in failing to properly inspect the car before putting it in use by those who might be injured thereby. We do not perceive that because the duty of inspection was first required from the railroad company, the case is thereby brought within the class which holds the one primarily responsible, as the real cause of the injury, liable to another less culpable, who may have been held to respond for damages for the injury inflicted. It is not like the case of the one who creates a nuisance in the public streets, or who furnishes a defective dock, or the case of the gas company, where it created the condition of unsafety by its own wrongful act, or the case of the defective boiler, which blew out because it would not stand the pressure warranted by the manufacturer. In all these cases the wrongful act of the one held finally liable created the unsafe or dangerous condition from which the injury resulted. The principal and moving cause resulting in the injury sustained was the act of the first wrongdoer, and the other has been held liable to third persons for failing to discover or correct the defect caused by the positive act of the other. In the present case the negligence of the parties has been of the same character. Both the railroad company and the terminal company failed by proper inspection to discover the defective brake. The terminal company, because of its fault, has been held liable to one sustaining an injury thereby. We do not think the case comes within that exceptional class which permits one wrongdoer who has been mulcted in damages to recover indemnity or contribution from another. For the reasons stated, the question propounded will be answered in the negative." In the course of the opinion the cases of Washington Gas Light Co. v. District of Columbia, 161 U. S. 316 (16 Sup. Ct. 564. 40 L. ed. 712), Oceanic Steam Nav. Co. v. Compania Transatlantica Espanola, 134 N. Y. 461 (31 N. E. 987, 30 Am. St. Rep. 685), Gray v. Boston Gas Light

Co., 114 Mass. 149 (19 Am. Rep. 324), and Boston Woven Hose Co. *v.* Kendall, 178 Mass. 232 (59 N. E. 657, 51 L. R. A. 781, 86 Am. St. Rep. 478), are distinguished from cases such as the one then before that court, and such as the one now before this court.

5. Counsel for the plaintiff in error stresses the fact that it appears from the testimony that the probable cause of the homicide in this case was the fact that at some point on the light company's lines outside of the railroad yards the wire had become grounded, and that but for this fact the touching of the wire against the cable at the coal chute would not have done any harm, that electricity is harmless until a circuit is completed, and that, unless the wire had been grounded elsewhere, the fact that the body of the deceased employee supplied the connection between the cable and the ground would not have completed the circuit. Concede that this is so, and still the right of an action over is not established. The present plaintiff was not mulcted in damages in the former case because of the grounding of the wire elsewhere. If that fact existed and was an act of negligence, and was the sole proximate cause of the injury, then the situation is simply that the jury in the first case, by reason of the full facts being undisclosed, held the wrong person liable. Of course, the very nature of the right of an action over in such cases requires that the second action shall proceed on the theory that the jury found correctly in the first case as to the facts giving rise to the cause of action therein asserted. If the jury made a mistake in saying that the railway company's negligence as to the erection, maintenance, and inspection of the wires was the direct and proximate cause of the decedent's death, and held that company liable when it should not have been held liable, then the error of the jury, and not the act of the present defendant, has caused the present plaintiff the loss sued for, namely, the amount expended in paying off the judgment in the former suit. But, even if this were not true, still, under the theory of fact here presented, the light company's negligence in allowing the wire to become grounded elsewhere would not have caused the homicide in this case if the negligence for which the jury held the present plaintiff liable had not concurred with it, i. e., if the wire had not been allowed to sag and come in contact with the wire cable, or if the proper inspection had been made as to the portion of the wire located in the railway yards. Hence, in this view of the case the

negligence was truly concurring, and there can be no action over for contribution or indemnity.

We have read a great many cases bearing more or less directly on the general question presented, and, after considering them all, we can not escape the conclusion that the case is squarely within the doctrine of the case of Union Stockyards Co. *v.* C., B. & Q. R. Co., *supra*; and while, of course, that decision is not absolutely binding on us, still it is very persuasive authority.

*Judgment affirmed.*