JOHN F. PFARR, HUGO GEBERT, and N. L. HUNT, Co-partners,
doing business under the firm name and style of PFARR,
GEBART & HUNT, Appellees, v. THE STANDARD OIL CO.,
Appellant.

**Joint tort feasors:** LIABILITY FOR CONTRIBUTION.  As a general rule one
wrong doer cannot recover indemnity from another who was also
identified with the same illegal or wrongful act; but where the one
not primarily responsible for the wrong has been compelled to respond in damages he may recover the amount from the one principally responsible.   Thus where a retailer sold as illuminating oil
that which did not comply with the required legal test, but contained a large percentage of gasoline, by which injury resulted to
the purchaser from an explosion and he recovered damages against
the retailer, the retailer was entitled to recover the amount from
the manufacturer who was primarily responsible, although he neglected to make a proper inspection of the oil after notice of its
dangerous properties.

**Same:** NOTICE OF SUIT: JUDGMENT: CONCLUSIVENESS: EVIDENCE.  Plaintiff sold illuminating oil containing a large percentage of gasoline,
from an explosion of which injury resulted to the purchaser and
plaintiff was compelled to respond in damages.   Plaintiff notified

defendant to appear and defend the suit on the theory that it was
primarily responsible for the injury, but it did not defend. The
basis of recovery against the retailer in that suit was that he was.
negligent in failing to make a proper test of the oil after notice
of its dangerous condition. *Held,* that the negligence charged, if
proved, would not have established the liability of the manufacturer,
and that the judgment was not conclusive against him. It is also
held that as the oil was tested and branded by the state oil in-
spector as complying with the statutory test, evidence merely that
three weeks after its sale to plaintiff a portion of the oil did not
meet the required test, was not sufficient to support a directed ver-
dict against the manufacturer, but the question of his liability
should have been submitted to the jury.

*Appeal from Crawford District Court.*—HON. F. M. POWERS,
Judge.

TUESDAY, APRIL 14, 1914.

ACTION to recover from defendant the amount of a judg-
ment rendered against plaintiff, with interest, costs, expenses,
and attorney's fees, in an action brought against plaintiff by
one Lee J. Chapman, which judgment, with interest, etc.,
plaintiffs paid, and they seek indemnity from defendant be-
cause of its (defendant's) wrong in selling it a barrel of kero-
sene which was dangerous, in that it contained a large per-
centage of gasoline. Plaintiffs, after being sued, notified de-
fendant to appear and defend the action, but it failed and
neglected to do so, and this action followed. The defendant
denied that the oil, when sold to plaintiff, was of a dangerous
character, and averred that plaintiffs were held liable in the
*Chapman* case because of their own negligence, and not be-
cause of any negligence of the defendant. It also alleged that,
if defendant was negligent at all, it was a joint tort-feasor
with plaintiffs, and that plaintiffs are not entitled to indem-
nity. Other defenses were interposed, and, aside from some
admissions, the effect of the answer was a general denial. On
the issues joined, the case was tried to a jury, and, at the con-
clusion of the testimony, each party moved for a directed ver-

dict. Defendant's motion was overruled, and plaintiff's motion was sustained, and defendant appeals.—*Reversed.*

*Clinton L. Nourse* and *Carr, Carr & Evans,* for appellant.

*Sims & Kuehnle,* for appellees.

DEEMER, J.—On April 26, 1907, plaintiff was a copartnership, doing business at the town of Pisgah, this state, and through its agent, one Strong, it purchased of defendant, through its traveling salesman, a barrel of kerosene oil (Perfection brand). The oil was shipped on that day in an ordinary wooden barrel from Sioux City, Iowa, via the Chicago & Northwestern Railway, and arrived at the point of destination on May 1st. One end of the barrel bore the state inspector's stamp, stenciled in the wood, and reading: "Perfection Oil. 2 flash tests 106 degrees. Apr. 24th, 1907. C. W. Kemp, Inspector. Filed Apr. 24, 1907."

On the day of arrival the oil was taken from the railway station to plaintiff's store, and unloaded at the back door in the alley, where it remained over night. Thereafter it was taken inside the building, and, when the barrel then in use was emptied (which was within five or six days), the bung of the new barrel was knocked out, the barrel placed on its side in a little hole in the dirt floor of the shed where the oil was kept, and a pump which had been used in other barrels was inserted for the purpose of drawing the oil. The bung was about three inches in diameter, and the pump not more than two inches. In the same shed plaintiffs kept a gasoline tank, which was to the right of and back of the kerosene barrel, about eight feet. Separate measures were kept for the oil and gasoline. There were two regular employees about the store, and occasionally another helped them, and all drew oil from the barrel in question by means of the pump, which had been inserted through the bunghole.

Two-thirds of the contents of the barrel had been sold at

the time when the accident occurred for which the Chapman suit was brought; and oil was sold to various persons who used it for illuminating and other purposes, without any ill effects. Of the many customers who purchased oil prior to the time of the sale to Mrs. Chapman, of which complaint is made, which was on May 25, 1907, but one had made any complaint or, so far as known, had noticed anything wrong with the oil. That complaint was from a Mrs. Bryson, who stated that there was something wrong with the oil. Strong, the plaintiff's agent, then made a superficial test of some of the oil taken from the barrel, and did not find anything wrong with it. The complaint came to Strong from ten days to two weeks before the accident.

On May 25, 1907, Mrs. Chapman came to plaintiff's store for a gallon of oil, and Strong, the agent, sold it to her, drawing it, as he said, from the barrel in question. On the evening of the day on which the oil was purchased, Mr. Chapman assisted his wife in starting a fire in a cook stove. He put in some cobs, and his wife poured on some of the oil she had purchased from plaintiffs, and then put the can down on the floor of the kitchen. He took a match, struck it, and applied the match to the cobs and oil, causing an explosion which resulted in the death of Mrs. Chapman and three children, and severe injuries to the husband. An investigation was made immediately as to the character of the oil remaining in the barrel, and also of oil that had previously been sold from the barrel to other customers, and it is claimed that, as a result thereof, the oil was found to contain something like twenty per cent. of gasoline, and that it did not test more than 67° Fahrenheit. Action was then brought by Chapman, the husband, against the plaintiffs herein, to recover the damages sustained by him in person, and for the loss of the services and society of his wife and the other members of the family.

Notice was given the defendant of this suit, and it was requested to appear and make defense to the action. This the

present defendant failed to do, and consequently plaintiffs
were compelled to make defense, and, at the end of several
trials, the case having twice reached this court, judgment was
rendered for Chapman in the sum of $1,084, which was af-
firmed in this court. Plaintiffs paid the judgment, with in-
terest, and also attorney's fees, expenses, costs, etc., amount-
ing to $1,725.92, and thereupon brought this action to recover
from defendant the amount so paid. The defenses to the
action have already been sufficiently noticed.

In the Chapman petition it was, among other things, al-
leged that:

The oil was sold and delivered to plaintiff's wife as coal
oil, it was twenty-one per cent. gasoline, and at the time, and
about one week before said sale to plaintiff's wife by defend-
ant's agent, A. C. Strong, he was notified that the oil con-
tained gasoline and was not right, and, notwithstanding said
notice and knowledge on the part of A. C. Strong, agent
of defendants, he failed and neglected to have the oil in-
spected or examined by an expert oil inspector, which, if done,
would have disclosed the dangerous and explosive character
of said oil, and shown that it was twenty-one per cent. gaso-
line, and, by reason of said negligence of said defendants and
their agent, Strong, in selling and delivering a dangerous
explosive which plaintiff, his wife and children had no knowl-
edge of at the time, but, by the use of reasonable care, the
defendants would have discovered, plaintiff charges that the
injuries inflicted were so caused by defendants' negligence as
aforesaid and plaintiff has sustained damages as follows.

Plaintiffs herein, defendants to that suit, filed a general
denial, and the case was tried to a jury upon the issues so
made and framed; the theory thereof appearing from the fol-
lowing instruction, given by the trial court:

(6) The specific allegation of negligence made in the
petition is that the agent of the defendants, after notice that
the oil contained gasoline, and was not right, failed and neg-
lected to have the oil inspected or examined by an expert oil

inspector, which, if done, would have disclosed the danger-
ous explosive character of said oil. On this point, as Strong
was the agent of the defendants carrying on the store in
question, his negligence, if he was negligent, would be the
negligence of the defendants. It was his duty to use reason-
able and ordinary care not to sell oil which did not conform
to the test required by law. In the first instance, and until
he had knowledge or notice to the contrary, or such notice
as would put a reasonably prudent man upon inquiry, which
would lead to such knowledge, he had the right to rely upon
the inspector's stamp or brand upon the barrel from which
the oil sold to plaintiff's wife was taken. If, however, such
information came to him prior to the sale of the oil to plain-
tiff's wife as would put an ordinary prudent person upon
inquiry and investigation that would have developed the
fact that the oil in question was not up to the required test,
then he was negligent in not making such investigation or
having it made before making further sales of the oil. There
is no requirement that the seller of oil provide himself with
apparatus for making the closed test such as the statute re-
quires to be made by the inspector, and there is no specific
requirement of law that the seller shall, under any circum-
stances, call upon a state inspector to determine the character
of oil which has been purchased in a barrel properly branded.
It was the duty of the said agent, Strong, on receiving infor-
mation, if he did receive it, such as would lead a reasonably
prudent man to think that the oil which he was selling out
of said barrel did not correspond to the brand on the bar-
rel, to himself make or cause to be made by some competent
person such inspection as would reasonably determine whether
the oil which he was selling was, in fact, dangerous; that
is, of a lower standard than that required by statute.

In response to interrogatories, the jury in that case also
made the following special findings:

Int. 1: Would the information received by the daughter
of Mr. Strong over the telephone from Mr. Booth lead an
ordinarily careful and prudent person to believe that the oil
in the barrel in question did not correspond to that indicated
by the stamp of the state oil inspector? Ans. 1: Yes.

Int. 5: Did Mr. Strong, at the time of the sale of the oil

in question to Mrs. Chapman, have reason to believe, as an ordinarily careful and prudent person, that a careful and proper use of the oil would result in injury or damage to any one? Ans. 5: Yes.

Int. 6: Was the test of the oil in question made by Mr. Strong such a test as is usually made by an ordinarily careful and prudent person? Ans. 6: No.

Int. 7: Was there anything in the test of the oil in question as made by Mr. Strong that would have suggested to an ordinarily careful and prudent person any necessity for a still further or different test of the oil? Ans. 7: Yes.

Int. 8: Was there anything in the test of the oil in question as made by Mr. Strong that disclosed the presence of gasoline in the oil? Ans. 8: No.

A general verdict was also returned for plaintiff, Chapman, in the sum of $1,084.15.

I. A verdict for plaintiffs was directed at the close of the testimony for the full amount of their claim, less two items of expense in another case; the full amount of the judgment, including interest, being $3,173.33. This appeal challenges the right of plaintiffs to recover at all; the contention being that, at most, plaintiffs and defendant were joint tort-feasors, and, each being guilty of an actionable wrong, neither may recover from the other any indemnity or enforce contribution. Again it is said that in no event should a verdict have been directed for plaintiff, for the reasons: (a) That the testimony shows no negligence on defendant's part, and no violation of any statute of the state; (b) that, although defendant was served with notice to appear and defend against the Chapman suit, no specific charges of negligence were pleaded in the petition which it was necessary or proper for it to defend against, and that the verdict and judgment recovered by Chapman were and are conclusive only as to the fact of rendition, and the amount and the cause of action on which they were rendered, but did not determine the question of defendant's negligence or of its liability over to plaintiffs, nor preclude it from setting up any defense which it could not have interposed to

the original Chapman suit.  In other words, it is contended
that, as no negligence was charged against it in the Chapman
Case, the judgment in that case is not conclusive on the ques-
tion of its negligence; that this was a matter for plaintiffs in
the case to prove; that they failed to do so; and that a verdict
should have been directed for it on its motion, and, in any
event, that the trial court was in error in directing a verdict
against it.

There are some inconsistencies in these claims.  The first
proposition that there can be no contribution between wrong-
doers, or that one may not recover indemnity from another
proceeds upon the theory that both were in the wrong, and, in
considering this problem, it must be assumed that there is suf-
ficient proof to show that defendant was negligent in selling
the oil to the plaintiffs, or that it violated some statute in so
doing.  Of course, an appellant need not necessarily be con-
sistent in his claims, and in one sense, perhaps, there is no in-
consistency.

II. We are brought, at the outset of the case, to this
fundamental proposition:  May one wrongdoer recover in-
demnity from another, or may he enforce contribution from

1. JOINT TORT
FEASORS: lia-
bility for con-
tribution.

him?  The general rule of course is that he
may not.  But an examination of the cases
discloses the fact that there are many ex-
ceptions to this rule.  A statute of this state, in force when
the sale of the oil was made, provided, in substance, that who-
ever sold for illuminating purposes any product of petroleum
that had not been inspected and branded, and which emitted a
combustible vapor at a temperature of less than 105° Fahren-
heit, upon a closed test, should be liable for all damages caused
thereby.  See section 2508 of the code.

Now in *Gray v. Boston Light Co.,* 114 Mass. 149 (19 Am.
Rep. 324) the Supreme Court of Massachusetts said:

The second objection taken by the defendant is that the
injury was caused by the negligence of the plaintiff and de-

fendant; that they were joint tort-feasors; and that there cannot be indemnity or contribution between them. When two parties, acting together, commit an illegal or wrongful act, the party who is held responsible in damages for the act cannot have indemnity or contribution from the other, because both are equally culpable, or *particeps criminis,* and the damage results from their joint offense. This rule does not apply when one does the act or creates the nuisance, and the other does not join therein, but is thereby exposed to liability and suffers damage. He may recover from the party whose wrongful act has thus exposed him. In such case the parties are not in *pari delicto* as to each other, though as to third persons either may be held liable.

Again, in *Lowell v. Boston & L. R. R.,* 23 Pick. (Mass.) 32 (34 Am. Dec. 37), the same court said:

Our law, however, does not in every case disallow an action, by one wrongdoer against another, to recover damages incurred in consequence of their joint offense. The rule is, *in pari delicto potior est conditio defendentis.* If the parties are not equally criminal, the principal delinquent may be held responsible to his codelinquent for damages incurred by their joint offense. In respect to offenses in which is involved any moral delinquency or turpitude, all parties are deemed equally guilty, and courts will not inquire into their relative guilt. But, where the offense is merely *malum prohibitum,* and is in no respect immoral, it is not against the policy of the law to inquire into the relative delinquency of the parties, and to administer justice between them, although both parties are wrongdoers. This distinction was very fully considered in a case recently decided by this court. *White v. Franklin Bank,* 22 Pick. 181. In that case the plaintiff had deposited in the bank a large sum of money payable at a future day, in violation of a provision in the Revised Statutes, which prohibits any such deposit or loan. Both parties were culpable, but, as the defendants were deemed the principal offenders, it was held that the plaintiff was entitled to recover back his deposit.

See, also, to the same effect, *Boston Co. v. Kendall,* 178 Mass. 232 (59 N. E. 657, 51 L. R. A. 781, 86 Am. St. Rep. 478); *Churchill v. Holt,* 131 Mass. 67 (41 Am. Rep. 191).

This matter was thoroughly considered in *Union Stock-yards Co. v. C., B. & Q. R. R.*, 196 U. S. 222 (25 Sup. Ct. 227, 49 L. Ed. 453, 2 Ann. Cas. 525), and that court, speaking through Justice Day, among other things said:

Coming to the very question to be determined here, the general principle of law is well settled that one of several wrongdoers cannot recover against another wrongdoer, although he may have been compelled to pay all the damages for the wrong done. In many instances, however, cases have been taken out of this general rule, and it has been held inoperative, in order that the ultimate loss may be visited upon the principal wrongdoer, who is made to respond for all the damages, where one less culpable, although legally liable to third persons, may escape the payment of damages assessed against him by putting the ultimate loss upon the one principally responsible for the injury done. These cases have, perhaps, their principal illustration in that class wherein municipalities have been held responsible for injuries to persons lawfully using the streets in a city, because of defects in the streets or sidewalks caused by the negligence or active fault of a property owner. In such cases, where the municipality has been called upon to respond because of its legal duty to keep public highways open and free from nuisances, a recovery over has been permitted for indemnity against the property owner, the principal wrongdoer, whose negligence was the real cause of the injury. Of this class of cases is *Washington Gaslight Co. v. District of Columbia*, 161 U. S. 316 (16 Sup. Ct. 564, 40 L. Ed. 712), in which a resident of the city of Washington had been injured by an open gas box, placed and maintained on the sidewalk by the gas company for its benefit. The district was sued for damages, and, after notice to the gas company to appear and defend, damages were awarded against the district, and it was held that there might be a recovery by the district against the gas company for the amount of the damages which the former had been compelled to pay. Many of the cases were reviewed in the opinion of the court, and the general principle was recognized that, notwithstanding the negligence of one, for which he has been held to respond, he may recover against the principal delinquent, where the offense did not involve moral turpitude, in which case there could be no recovery, but was merely

*malum prohibitum,* and the law would inquire into the real delinquency of the parties, and place the ultimate liability upon him whose fault had been the primary cause of the injury. . . . The case then stands in this wise: The railroad company and the terminal company have been guilty of a like neglect of duty in failing to properly inspect the car before putting it in use by those who might be injured thereby. We do not perceive that, because the duty of inspection was first required from the railroad company, the case is thereby brought within the class which holds the one primarily responsible, as the real cause of the injury, liable to another less culpable, who may have been held to respond for damages for the injuries inflicted. It is not like the case of the one who creates a nuisance in the public streets; or who furnishes a defective 'dock; or the case of the gas company, where it created the condition of unsafety by its own wrongful act; or the case of the defective boiler, which blew out because it would not stand the pressure warranted by the manufacturer. In all these cases the wrongful act of the one held finally liable created the unsafe or dangerous condition from which the injury resulted. The principal and moving cause, resulting in the injury sustained, was the act of the first wrongdoer, and the other has been held liable to third persons for failing to discover or correct the defect caused by the positive act of the other.

Assuming, then, that defendant might have been made liable, it must be on the theory that it sold plaintiffs the oil which did the injury, and that it was not of the kind and test required by statute. If this were the case, the right of plaintiff to recover indemnity would, as we think, have been established. Appellant's first proposition is untenable, under all the cases to which our attention has been called. It is not like one where each owed the duty of inspection. That obligation was primarily upon the defendant, and it was not only required to make the necessary tests, but to have the state inspector do so, and to put the necessary brands upon the barrel in which the oil was sold.

III. The other question, to wit, the effect of the judgment in the Chapman Case upon this defendant, in view of the

fact that it was given notice of the suit and requested to defend, is much more difficult of decision.

2. SAME: notice of suit: judgment: conclusiveness: evidence.

The object of the notice was, no doubt, for the purpose of giving whatever judgment which might be obtained conclusive effect, and to relieve the defendants therein, plaintiffs here, from the necessity of making any further proofs in their suit for indemnity. Failure to give the notice in no manner relieved the responsible party from his obligation, if there was any; but, if not given, the party primarily responsible would have the right to contest its liability and to defeat recovery, although the party bringing the suit for indemnity may have been compelled to pay.

The first proposition to be considered here then is: Could the present defendant have appeared in the Chapman suit and succeeded in defeating it by proving that it was in no manner to blame; that the oil which it sold had been tested, and stamped, and was of the required grade when it sold the same to the plaintiffs herein. Such a defense might or might not have been available, depending, of course, upon circumstances shown and relied upon by the plaintiff in that case. It is apparent that it might have been wholly blameless and still Chapman would have been entitled to recover because of the negligence of the defendants in that suit, or their agents. Indeed, it appears from the record that recovery was had because of the negligence of defendants' agents in not testing the oil after knowledge that some of it was dangerous, before selling the same to Mrs. Chapman. Whether or not it was dangerous and under test when sold by defendant to plaintiff was a collateral issue of more or less importance, yet still not controlling.

Again, the only testimony, which any way tended to show that the oil was not of the test required, and that it contained gasoline when sold by defendant to plaintiff, was that some three weeks after plaintiff received it, put it in their shed, opened the bung and placed a pump therein, it did not

answer the required tests, although it was properly inspected and branded by a state official but a few days before it was sold. Against any presumption that the oil was dangerous, when sold by defendant, arising from the fact that some two or three weeks after delivery to the plaintiffs some of it was found to be under test, there is also a presumption that the state inspector, who was occupying an official station, did his duty; and that, when tested and branded by him, and sold to the plaintiffs, the oil met the requirements of the law. The rules upon this subject seem to be fairly settled, as will appear from the following cases:

In *Littleton v. Richardson*, 34 N. H. 188 (66 Am. Dec. 760), the Supreme Court of New Hampshire said:

In actions of this kind several points must be established by the plaintiff, as: (1) The contract or relation upon which the liability over depends; (2) an action for a case for which the defendant is so liable under that contract or relation; (3) a notice to the defendant to take upon him the defense of the suit; (4) a recovery of damages, of which the record is conclusive evidence when the other points are established. No presumption is allowed as to either of these points. Each is to be proved. Neither of these points is admitted here. It was admitted that the defendant placed in the highway the stones referred to in Shute's declaration against Littleton, and a notice to Richardson to defend the suit brought by Shute against the town was proved, and a recovery by Shute against the town for the causes set forth in his declaration, among which were the stones placed in the highway by the defendant. The liability over of Richardson depended upon the points that the injury sustained by Shute was occasioned in part or entirely . . . by the stones placed by him in the highway, and that the recovery by him against the town was upon the same account. Of these points, the only evidence offered was the judgment itself. The admission as to placing the stones in the highway did not reach these points. There might be cases where the judgment would be evidence of these points, because it would be apparent upon the face of the record that the recovery was had for the same cause alleged in the action against the party ulti-

mately responsible. But it would rarely happen that some connecting evidence would not be required to show the identity of the cause of action upon which the recovery was had with that in which the recovery over is claimed. If, however, the declaration in that case had so stated the cause of action that the court could clearly see that the cause there stated was identical with the cause stated in the present declaration, and that the recovery could have been for no other cause, the judgment would be competent and conclusive evidence of this point. But, if the declaration leaves that matter in any doubt, that deficiency must first be supplied by evidence aliunde before the judgment can be admitted as evidence of anything beyond its own rendition and tenor. . . . From these views, it follows that, to render the record in *Shute's* case evidence generally in this action, it should have been shown that the recovery in that case was upon the same ground which is alleged as the cause of action in this case, and consequently that the ruling of the court below, that the record alone was conclusive evidence of all the facts required to support the action, after it had been shown that the defendant placed the stones in the highway, cannot be sustained.

In *Scott v. Curtis,* 195 N. Y. 424 (88 N. E. 794, 40 L. R. A. [N. S.] 1147, 133 Am. St. Rep. 811), the Supreme Court of New York, in speaking of this question said:

The plaintiff in this action cannot recover, unless he shows that the active negligence and wrong which caused the injury to the person falling into the hole was the negligence and wrong of the defendants. As we have stated, it does not appear from the record how the accident occurred. If it occurred by the negligent and careless manner in which the defendants temporarily covered or guarded the coal hole, it may be assumed that this action will lie. If, however, the injuries occurred by reason of the cover of the hole breaking, without any negligence or carelessness on the part of the defendants or by reason of some carelessness of the plaintiff in this action, or by reason of some defect in the construction of the cover to such coal hole wholly independent of the temporary use thereof, the defendants are not liable. It may be assumed, for the purpose of this opinion, that, notwithstanding the plaintiff's admission that he was liable in

the action brought by the person who fell into the coal hole, nevertheless the judgment roll establishes, as against the defendants herein, that the plaintiff therein was injured by reason of negligence in connection with the covering of said hole, and that her negligence did not contribute to such injury, and that it also establishes the amount of her damages, but it was also incumbent upon the plaintiff to give evidence in addition to the judgment roll in that action to show that the accident occurred by negligence for which the defendants were primarily liable. This he wholly failed to do, and the judgment must therefore be reversed.

In *Central Co. v. Macon Light Co.,* 9 Ga. App. 628 (71 S. E. 1076), the Supreme Court of Georgia said: ·

Where one of the parties to a pending action claims that a third person is liable over to him in the event he loses in the suit, and vouches that person by notifying him of the pendency of the suit and giving him opportunity to appear therein, the judgment in that suit is conclusive on the person vouched as to the correctness of the judgment, but is not conclusive of the fact that there is such a relationship between the person vouched and the person vouching as that a right of action over exists.

See also, to the same effect, *Consolidated Co. v. Bradley,* 171 Mass. 127 (50 N. E. 464, 68 Am. St. Rep. 409) ; *Missouri Pac. Co. v. Twiss,* 35 Neb. 267 (53 N. W. 76, 37 Am. St. Rep. 437)'.

These cases, and others which might be cited, seem to hold to the rule that one not a party to a suit, but notified to appear and defend, must do so, if the negligence charged is such that, if proved, would make it liable for the wrong done; but that it need not do so if the defendant in the suit would be liable for his own negligence, independent of any wrong on the part of the person so notified. The party injured may select his own ground for recovery, and sue one alone for his independent negligence, and if he does so, and the defendant seeks to hold a stranger by giving notice of the suit, and offering him an opportunity to defend, the case must be such

that his defense, if established, would be an end to the suit, save as he might be permitted to defeat the action by proof of his freedom from negligence, he would be held liable to another without an opportunity to defend himself. If, in response to the notice, the defendant had appeared and offered to defend it could not interpose any defense not personal to itself, and, by putting in such a defense, it might have tendered a false issue, in so far as the original case was concerned, thus complicating the issues and delaying the trial.

The record made in the *Chapman* case and the special findings of the jury conclusively show the grounds of recovery in so far as plaintiffs herein are concerned. *Central Ry. v. Light Co.*, 9 Ga. App. 628 (71 S. E. 1076) ; *Chicago & N. W. R. R. v. Packet Co.*, 70 Ill. 217.

We do not mean by this pronouncement to hold that the defendant's motion for a directed verdict should have been sustained. On the theory on which the case was tried, the matter should have gone to the jury on the testimony adduced. It may be that, instead of introducing the record upon the former trial, plaintiffs should have produced affirmative testimony, either in the form of depositions or their equivalent, or oral testimony showing or tending to show that the oil, when delivered to it by the defendant, was not of the kind required by statute, and had the jury pass upon that question as one of fact. No proper objection was made to the testimony as offered on the present trial, because the witnesses were not present; and, accepting this as true, we think there was enough to take the case to the jury. This may be supplemented by testimony on another trial, showing, circumstantially or otherwise, that the oil when delivered to the plaintiffs was not of the kind required by statute.

No other points are made for appellant which require consideration at this time.

It follows, however, that the judgment must be, and it is, —*Reversed.*

LADD, C. J., and GAYNOR and WITHROW, JJ., concurring.