CENTRAL OF GEORGIA RAILWAY COMPANY *v.* MACON
RAILWAY AND LIGHT COMPANY.

1. The petition showed that the plaintiff had been required, under a judg-
ment in a prior suit, to pay a certain sum as damages for a homicide;
that in that suit it had, by notice duly served, vouched in the present
defendant; that the injuries which resulted in the homicide were caused
by wrongful acts and negligence upon the part of the defendant, in
which acts and negligence the plaintiff had in no way participated;
and that it was not guilty of the same or like negligence as that of the
defendant which resulted in the injury.  *Held,* that a right of action in

the plaintiff was stated in the petition, and it was error for the court to sustain a general demurrer thereto.

2. The fact that the plaintiff had formerly brought suit for the same cause of action and had been nonsuited, which judgment of nonsuit was affirmed upon appeal to the Court of Appeals of this State, does not prevent the bringing of the suit again within six months from the date of the affirmance of the judgment of nonsuit. Civil Code, § 4381.

JULY 18, 1913.

Action for damages. Before Judge Felton. Bibb superior court. March 11, 1912.

The plaintiff is seeking to recover from the defendant the amount of a judgment rendered against the plaintiff, which it was compelled to pay, in favor of the widow of E. O. Minor, in a suit brought by her for the homicide of her said husband; it being now alleged that the proximate cause of Minor's death was the negligence of the defendant in the present case. In the original suit it was alleged, that Minor, being in the employment of the Central of Georgia Railway Company, was required to assist in coaling an engine of that company at a coal-chute in its yards; that he was directed to go upon the tender of the engine and pull down an apron in order that the coal from the bin might be conveyed into the tender; that the apron, which was of sheet metal, was held in position by a steel cable, used in raising and lowering the apron; that when Minor took hold of the apron to lower it, the cable attached thereto came in contact with an electric-light wire which was fastened to the coal-chute and from there carried to a pole some distance off, upon which an arc light was situated; that when the cable came in contact with this wire, which was heavily charged with electricity, the electric current passed into and through Minor's body, so shocking him that he then and there died. It was alleged that Central of Georgia Railway Company was guilty of negligence in the following particulars: that the wire had been maintained in that place where it was likely to come in contact with the cable, and where it was likely to so charge the same with electricity, for a great length of time; that it was under the entire control and management of the said Central of Georgia Railway Company; that the proximity of the wire to the cable, and the danger of their coming in contact, and of the current of electricity passing from the wire into the cable and being conveyed to the apron, was well known to the railway company, or could easily have been ascertained by the exercise of ordinary care and diligence on its part;

that the danger to employees of said company, in the use of said appliance, could easily have been discovered and guarded against, had it used ordinary care and diligence; that the wire was originally placed in said position unnecessarily and carelessly; that it could have been placed in another position where it would have served the purpose and not have come in contact with said appliance; that the danger to the lives of the company's employees was imminent at all times, and this fact was well known or, by the exercise of ordinary care, could have been known by the company. Before trial of that suit the Central of Georgia Railway Company vouched the Macon Railway & Light Company into court to defend the suit, the latter company having erected the pole and the arc light and strung the wire, and owning the same. The Macon Railway & Light Company did not appear and make defense. A verdict was rendered against the Central of Georgia Railway Company, and judgment was entered thereon, which that company had to pay. It then filed suit in the city court of Macon against the Macon Railway & Light Company to recover the amount it had so been required to pay out, which suit upon the trial was nonsuited. Upon writ of error to the Court of Appeals the judgment granting a nonsuit was affirmed. Within six months after the affirmance of the judgment the present suit was brought in Bibb superior court by the same plaintiff against the Macon Railway & Light Company. The allegations in this latter suit are sufficiently set forth in the opinion, infra. Upon general demurrer the court below dismissed the petition, and the plaintiff excepted.

*R. C. Jordan,* for plaintiff.

*Guerry, Hall & Roberts,* for defendant.

BECK, J. (After stating the foregoing facts.) While it may be true that as a general rule one of two or more joint tort-feasors has no right of action over against those connected with him in the tort, for either contribution or indemnity, where he alone has been compelled to satisfy the damages resulting from the tort, yet in some cases one who is liable as a tort-feasor because he has failed to exercise due diligence to discover a defect or danger in machinery, appliances, or place where the injured person is required to work, and has been compelled to pay damages for injuries growing out of the tort, may have a right to recover over against another whose negligence produced or brought about the defect or

dangerous condition in the machinery, appliances, or place, which defect was the proximate cause of the injury. And the present case seems to us to belong to the latter class. The plaintiff charges that the defendant was negligent in respect to certain acts which were the proximate cause of the death of Minor, for which Minor's widow recovered damages in the previous suit. It is charged in the petition that the plaintiff employed the defendant to erect and maintain an arc light near petitioner's coal-chute, for the purpose of furnishing light to its employees engaged in performing their duties about the coal-chute. The plaintiff pointed out to the defendant the place where it desired the light to be erected, but left it with the defendant as to how the wires should be strung in order to furnish the arc light with electricity; and the arc light and the wires connected therewith were the sole property of the defendant. Petitioner was entirely inexperienced as to electricity and in the matter of electrical appliances, and had to rely upon the skill and knowledge of the defendant to so construct and insulate its wires that there would be no danger to the property of petitioner or its employees while engaged about their work. It is alleged, that the defendant strung its wires connected with the light along the side of the coal-chute in such a way that the steel cable used in operating the "apron" which is used for coaling the engine would come in contact with the electric wire while lowering and raising the apron; that the defendant was negligent in not properly insulating the wire and in not keeping it insulated, in failing to guard and protect the wire, in not so placing the wire that it would have been impossible for the cable operating the "apron" to come in contact with it, and in failing to make the necessary inspection; that defendant negligently and improperly maintained and operated its electric circuit, known as the arc circuit, to which said wire was connected and of which it formed a part; that it was maintained with a "ground" and allowed the circuit to become "grounded;" that the grounding of the circuit was not necessary for the transmission and distribution of electricity for lighting purposes, and if the circuit had not been grounded in its construction it would have been impossible for any person coming in contact with the wires thereof to have been injured by the electric current conveyed by it; and that negligence upon the part of the defendant in the respects just set forth was the proximate cause of the homicide of E. O. Minor, etc.

From this enumeration of the acts of negligence it is clearly made to appear that the defendant maintained its wires and the circuit with which they were connected in a dangerous condition; and that this construction of the circuit and maintenance of it in a dangerous condition was the principal and moving cause resulting in the injury sustained by the employee referred to above. The improper construction and placing of the wires, or placing of them as they were, without proper insulation, and the grounding of the wires, when considered in connection with the fact that the wires were placed in such close proximity to the "apron" that they would come in contact with it while the latter was being operated, amounted to positive acts of misfeasance relatively to any one who should receive injury in consequence of the negligent construction of the circuit and its wires and the way in which they were maintained. Now, if the railroad company were guilty of the same wrong or like wrong—if it participated in the positive act of constructing and maintaining the dangerous circuit and the wires constituting the same, then it would have no right of indemnity from the defendant, after having been required to pay damages. But under the allegations of the petition (and these allegations are to be taken as true as against the demurrer) the plaintiff was not guilty of any of these positive acts of wrong-doing and negligence. And while it had been successfully shown in the prior suit against the plaintiff that it was guilty of such negligence as rendered it liable, that liability may have grown out of negligence which may be described as of a negative character,—negligence consisting in a failure to make inspection of the electric circuit and the wires connected therewith. Such negligence as this was sufficient to render it liable in damages to its injured employee; and the mere fact that the widow of an injured employee recovered a verdict for his homicide against this plaintiff, in a former suit wherein negligence of both kinds was charged— that is, negligence which we have referred to as positive acts of negligence, as well as negligence consisting in omission to inspect— should not preclude this plaintiff from now showing that its liability in the other suit was based entirely upon its failure to inspect, and that no positive acts causing the injury were proved against it; and that it was not as a matter of fact a participant in the positive acts of the original wrong-doer, the Macon Railway &

Light Company. While it is true that in the case of *Central of Georgia Railway Co.* v. *Macon Railway & Light Co.,* 9 *Ga. App.* 628 (71 S. E. 1076), the judge delivering the opinion uses language showing that the court was of the opinion that the negligence of both the plaintiff and the defendant was of the same kind, and that they were mere joint tort-feasors, so that there could be no right to indemnity to the one who was first held liable, that is not an adjudication of the issues in this case. The only issue in that case to be decided was, whether a nonsuit had been properly granted.

The conclusion which we have announced, as to the liability over by one guilty of positive acts which resulted in injury, when another has been held liable in the first instance because of a failure to exercise due diligence in the matter of making inspection, finds support in decisions by other courts. Attention is called to the case of Union Stock Yards Co. *v.* C., B. & Q. R. Co., 196 U. S. 217 (25 Sup. Ct. 226, 49 L. ed. 453, 2 Ann. Cas. 525). In that case the Circuit Court of Appeals certified the following question: "Is a railroad company which delivers a car in bad order to a terminal company that is under contract to deliver it to its ultimate destination on its premises for a fixed compensation, to be paid to it by the railroad company, liable to the terminal company for the damages which the latter has been compelled to pay to one of its employees on account of injuries he sustained while in the customary discharge of his duty of operating the car, by reason of the defect in it, in a case in which the defect is discoverable upon reasonable inspection?" Accompanying the question, and for the purpose of illustrating it, was a statement of the facts as follows: "The plaintiff, the Stock Yards Company, is a corporation which owns stock-yards at South Omaha, Nebraska, railroad tracks appurtenant thereto, and motive power to operate cars for the purpose of switching them to their ultimate destinations in its yards from a transfer track which connects its tracks with the railways of the defendant, the Burlington Company. The Burlington Company is a railroad corporation engaged in the business of a common carrier of freight and passengers. The defendant places the cars destined for points in the plaintiff's yards on the transfer track adjacent to the premises of the plaintiff, and the latter hauls them to their points of destination in its yards for a fixed compensation, which is paid to it by the defendant. The plaintiff receives no part

of the charge to the shipper for the transportation of the cars, but the defendant contracts with the shipper to deliver the cars to their places of ultimate destination in the plaintiff's yards and receives from the shipper the compensation therefor. The defendant delivered to the plaintiff upon the transfer track a refrigerator car of the Hammond Packing Company, used by the defendant to transport the meats of that company, to be delivered to that company by the plaintiff in its stock-yards. This car was in bad order, in that the nut above the wheel upon the brake was not fastened to the staff, although it covered the top of the staff and rested on the wheel as though it was fastened thereto; and this defect was discoverable upon reasonable inspection. The plaintiff undertook to deliver the car to the Hammond Company, and sent Edward Goodwin, one of its servants, upon it for that purpose, who, by reason of this defect, was thrown from the car and injured while he was in the discharge of his duty. He sued the plaintiff, and recovered a judgment in one of the district courts of Nebraska, for the damages which he sustained by his fall, on the ground that it was caused by the negligence of the Stock Yards Company in the discharge of its duty of inspection to its employee. This judgment was subsequently affirmed by the Supreme Court of Nebraska (Union Stock Yards Co. v. Goodwin, 57 Nebraska, 138 [77 N. W. 357]), and was paid by the plaintiff." The Supreme Court of the United States, conceding for the sake of argument that the injured employee could have sued either company or both of them, said: "The case then stands in this wise: The railroad company and the terminal company have been guilty of a like neglect of duty in failing to properly inspect the car before putting it in use by those who might be injured thereby. We do not perceive that, because the duty of inspection was first required from the railroad company, the case is thereby brought within the class which holds the one primarily responsible, as the real cause of the injury, liable to another less culpable, who may have been held to respond for damages for the injury inflicted. It is not like the case of the one who creates a nuisance in the public streets, or who furnishes a defective dock; or the case of the gas company, where it created the condition of unsafety by its own wrongful act; or the case of the defective boiler, which blew out because it would not stand the pressure warranted by the manufacturer. In all these cases the

wrongful act of the one held finally liable created the unsafe or
dangerous condition from which the injury resulted. The principal
and moving cause, resulting in the injury sustained, was the act of
the first wrong-doer, and the other has been held liable to third
persons for failing to discover or correct the defect caused by the
positive act of the other. In the present case the negligence of the
parties has been of the same character. Both the railroad company
and the terminal company failed by proper inspection to discover
the defective brake. The terminal company, because of its fault,
has been held liable to one sustaining an injury thereby. We do
not think the case comes within that exceptional class which per-
mits one wrong-doer who has been mulcted in damages to recover
indemnity or contribution from another. For the reason stated,
the question propounded will be answered in the negative."

It will be observed that in the opinion in the case from which
the foregoing quotation is taken the Supreme Court of the United
States recognized the doctrine that there will be a final and ultimate
liability and liability over in all cases where the wrongful act of the
one held finally liable was of a positive and creative nature bringing
about the unsafe or dangerous condition from which the injury
resulted; and that court makes a distinction between negligence
consisting in omission or failure to make proper inspection, and
negligence in the performance of positive or creative acts, as where
one creates or maintains the unsafe or dangerous condition causing
the injury. It did hold in the case with which it was dealing that
there was no liability over, but based the holding on the ground
that the negligence of the parties was of the same character.
"Both the railroad company and the terminal company failed by
proper inspection to discover the defective brake." And if, upon
a trial of this case, it should appear that the negligence which
resulted in the injury for which the plaintiff was held liable in the
first instance did not consist of positive and creative acts upon the
part of the defendant in the present case, but grew out of a failure
to inspect merely, and the duty of inspecting was one resting both
upon this plaintiff and this defendant, then, both having been
guilty of the same or like negligence, there would be no liability
over so as to make the company now sued indemnify the one held
liable in the first instance. The doctrine of liability over on the
part of one who creates or maintains an unsafe and dangerous

condition, to another one who has been held liable primarily because of negligently allowing the dangerous condition to remain, was recognized by this court in the case of *Western & Atlantic Railroad Co.* v. *City of Atlanta,* 74 *Ga.* 774. From the report of that case it appears that one Montgomery brought suit against the City of Atlanta and recovered a judgment for a certain amount, which judgment the city had to pay. Montgomery was injured while passing along one of the streets of the city and down certain steps; which steps the railroad company had negligently and wrongfully allowed to be out of repair and in a defective and dangerous condition; and it was in consequence of this negligence upon the part of the railroad company—the steps being at a crossing of one of the streets over the tracks of the railroad—that Montgomery was injured. The City of Atlanta vouched the Western & Atlantic Railroad Company into the first suit, and, after having paid the judgment recovered by Montgomery, sued the railroad company, and in this last suit recovered of the defendant the amount for which the city had been held to be primarily liable. The railroad company brought the case to this court for review; and in a decision affirming the judgment of the court below it was said: "First. That a municipal corporation, having the care and control of the streets, is bound to see that they are kept safe for the passage of persons and property. If this duty be neglected, and one should be injured on account of such neglect, the corporation will be liable for damages. Second. If the injury should occur in a street and on account of defects in the same, and if the street, at the point where the injury occurred, was used as a right of way of a railroad company, in such case the municipal corporation would have a remedy over against the railroad company for the amount which it had been compelled to pay, provided it be shown that the injury resulted from the negligent conduct of the agents of the railroad company. In such case, the railroad company would be allowed to show that it was under no obligation to keep the street in safe condition where the injury occurred, or that it was not the fault of the railroad company that the accident happened, or that both the agents of the railroad company and municipal corporation were at fault." See also, in this connection, the cases of Washington Gas Light Co. *v.* District of Columbia, 161 U. S. 316 (16 Sup. Ct. 564, 40 L. ed. 712), Oceanic Steam Navigation Co. *v.* Compania Trans-

atlantica Espanola, 134 N. Y. 461 (31 N. E. 987, 30 Am. St. R. 685), Gray *v.* Boston Gas Light Co., 114 Mass. 149 (19 Am. R. 324), and Boston Woven Hose Co. *v.* Kendall, 178 Mass. 232 (59 N. E. 657, 51 L. R. A. 781, 86 Am. St. R. 478), which are referred to in the case of Union Stock Yards Co. *v.* C., B. & Q. R. R. Co., supra.

We do not think that the plaintiff's case should have been dismissed upon general demurrer, but the case should be tried and the plaintiff be permitted to show, if it can, by competent evidence, that the proximate cause of the injury to the plaintiff's employee, for which it has already been mulcted in damages, was the result of positive wrongful acts and negligence upon the part of the defendant in the instant case, and that the plaintiff had not participated in these wrongful acts and was not a mere joint tortfeasor in the sense that it had been guilty with the defendant of the same or like negligence which resulted in causing the fatal injuries.          *Judgment reversed.   All the Justices concur.*