*Dan. R. Bruce,* contra.

---

11699.  McAFEE *v.* ATLANTIC ICE & COAL CORPORATION.

BROYLES, C. J.  Under all the particular facts of the case as disclosed by the record, the court did not err in awarding a nonsuit.

*Judgment affirmed. Luke and Bloodworth, JJ., concur.*

DECIDED DECEMBER 15, 1920.

Action for damages; from city court of Atlanta — Judge Reid. June 3, 1920.

On account of personal injuries from a fall caused by a broken piece of cement of the sidewalk giving way under her foot when she stepped upon it in walking on Whitehall street in the City of Atlanta, at a place where the sidewalk was intersected by Duvall's alley, Mrs. McAfee sued the Atlantic Ice and Coal Corporation for damages, alleging that this condition of the sidewalk was caused by heavy trucks and wagons of the defendant which broke and cut up the cement in crossing the sidewalk into and out of the alley during the month of February, 1918, and prior to the 19th day of that month, on which day the fall occurred, and that the defendant was negligent in breaking the sidewalk and leaving it in this condition. On the trial the court, at the conclusion of the evidence introduced by the plaintiff, granted a nonsuit on the motion of the defendant. The defendant's contentions were: " that plaintiff by her constant use of the sidewalk at this point knew of its condition prior to her injury; that there was no proof

of any negligence in the operation by this defendant of its motor-trucks across this sidewalk at this alley point; that it was the duty of the City of Atlanta to keep up this sidewalk and not the duty of defendant to keep it up, and that defendant was not liable for the usual wear and tear upon the sidewalk by reason of crossing it at the alley point by motor vehicles and other vehicles in the use of that alley;" that "plaintiff's case proceeded upon the theory that this defendant had negligently torn up this alleyway, and the indisputable proof showed that the sidewalk which was a part of this alleyway had been gradually worn out by its use through the years, and had not been repaired either by adjacent property owners or by the city."

From the evidence it appeared that in January, 1918, the defendant purchased the wagons, trucks, and other property of the Southern Ice Company, which for some years and until the sale of its property had been regularly using these vehicles in crossing the sidewalk at the place mentioned, to go to and from its stable in Duvall's alley, and that this use was continued by the defendant. Duvall's alley was a public alley, with houses in it in which people resided, and was used by other vehicles than those mentioned above, but not, so far as the witnesses knew, by vehicles so large or so heavily loaded as the defendant's ice-wagons or trucks. It was testified that the cement of the sidewalk had begun wearing and breaking prior to 1918, and that a few days before the plaintiff fell a place broke "clear across the pavement into the alley;" that the wheels of the ice-wagons would strike the concrete and break it when turning into the alley; that they were driven recklessly and had worn a place several inches deep where they went in and out, and had almost knocked over a stone post. The plaintiff resided near the alley; there was one lot between it and her home, and she "had been going by there for a year." She testified: "I noticed this Duvall's alley there from time to time; it was broken part of the way and there was a stone that was knocked over partly; . . but there was a place, when I would go down the sidewalk, that I would walk, next to the residence section, that had not been crushed, and I tried to pick my way. On this occasion, the 19th of February, the sidewalk had been broken across; it had been crushed; and as I stepped to walk across the cement it threw me from my feet; I had no balance; the cement had been broken

entirely across the sidewalk; that had been done just a few days before that." "As I put my foot on the cement it gave way, and I fell into the fragments of that place. . . The sidewalk showed a crushed condition, seemed to be heavy rains, something had softened the dirt under the base of the cement. . . When I fell it did not show there were ruts or crushed cement; it just looked like the alley was a rough, broken alley, like I hit it with a sledgehammer, and when I put my foot on that cement it tilted me on my face. . . When I went across the sidewalk I did not investigate the place, for I never dreamed of falling. I picked the best places to walk across until I fell. . . When I went across here for several months I. didn't stop to see it was not in good condition; I just walked carefully across on the best side of the sidewalk. . . I only saw it was tolerably good to walk on and walk across."

*Edgar Latham,* for plaintiff, cited: Civil Code (1910), §§ 4456-7; 74 *Ga.* 774(3); 140 *Ga.* 314-6; 37 Cyc. Law & Prac. 247, 268; 68 *Ga.* 431(3-5); 112 *Ga.* 607(2); 143 *Ga.* 436; 141 *Ga.* 721; 85 *Ga.* 146(1), 156; 138 *Ga.* 600(5); 2 Dill. Mun. Corp. (5th ed.), sec. 1727; 93 *Ga.* 462(3); 96 *Ga.* 450(2), 452; 140 *Ga.* 713(2), 716; 145 *Ga.* 133(1); 144 *Ga.* 403; 113 *Ga.* 575.

*McDaniel & Black,* for defendant, cited: 120 *Ga.* 785(2); 92 *Ga.* 628; 113 *Ga.* 152; 95 *Ga.* 135; 53 *Ga.* 607; 55 *Ga.* 17; 74 *Ga.* 774.