A04A2167. CITY OF COLLEGE PARK v. FORTENBERRY.
(609 SE2d 763)

MILLER, Judge.

As the settling employer of the initial tortfeasor in a personal injury case, the City of College Park brought this action for contribution and indemnity against Jewell Fortenberry, M.D., who was allegedly negligent in his treatment of the plaintiff after the initial injury. The trial court granted Fortenberry's motion for summary judgment on the ground that Georgia law does not allow an initial tortfeasor to obtain either contribution or indemnity against a subsequent tortfeasor. We disagree, and therefore reverse.

On appeal from a grant of summary judgment, we review the evidence de novo to determine whether the trial court erred in concluding that no genuine issue of fact remains and that the moving party is entitled to judgment as a matter of law. *Rubin v. Cello Corp.*, 235 Ga. App. 250 (510 SE2d 541) (1998).

So viewed, the evidence reveals that in May 1998, the plaintiff in the underlying action was hit by an on-duty College Park police officer, who pulled out in front of him. The plaintiff suffered injuries producing neck and back pain, for which he received treatment from two different doctors. One of these doctors referred the plaintiff to Fortenberry, an anesthesiologist, who eventually administered nine epidural steroid injections over a thirteen-month period. Nine months

---

[6] See *Hathcock*, supra; see also *Baker v. State*, 254 Ga. App. 19, 20-21 (2) (561 SE2d 185) (2002).

after the last of these injections, a fourth doctor diagnosed the plaintiff with adhesive arachnoiditis, a clumping of nerve roots possibly resulting from lumbar puncture.

In the meantime, the plaintiff filed suit against the police officer and the City. The City eventually settled the case for $575,000, and then filed this action for contribution and indemnity against Fortenberry. In the course of discovery, plaintiff's counsel testified that before the arachnoiditis diagnosis, the case's value was between $50,000 and $100,000, and that after the diagnosis, the case's value was between $500,000 and $750,000. Fortenberry moved for summary judgment, which was granted. On appeal, the City argues that because it would have been liable as a matter of law for damages arising from Fortenberry's negligence, it must be entitled to either contribution or indemnity from him, and that the trial court therefore erred when it granted Fortenberry's motion for summary judgment.

1. As a preliminary matter, we note a few relevant and well-settled principles. First, an initial tortfeasor is liable for the reasonably foreseeable consequences of his tortious act, including the negligent conduct of a treating physician. See *Coleman v. Atlanta Obstetrics & Gynecology Group*, 194 Ga. App. 508, 510-511 (1) (390 SE2d 856) (1990); *Gay v. Piggly Wiggly Southern*, 183 Ga. App. 175, 178-179 (2) (358 SE2d 468) (1987); *Smith v. Hardy*, 144 Ga. App. 168, 173 (16) (240 SE2d 714) (1977). The City settled this case for an amount within the range of the purported value of the case in the wake of Fortenberry's alleged negligence. This decision to settle cannot have any bearing on the City's right to seek such contribution or indemnity as Georgia law may allow. OCGA § 51-12-32 (a) and (c) (rights of contribution and indemnity "shall not be lost or prejudiced by compromise and settlement" of personal injury or wrongful death claim).

At oral argument, Fortenberry made much of the fact that the City had failed to join him as a co-defendant in the plaintiff's original action. It is well established, however, that just as a plaintiff has the right to elect which tortfeasor he will proceed against, a named tortfeasor is under no obligation to seek joinder of other tortfeasors in the plaintiff's original action. See OCGA §§ 9-11-20 (a) ("All persons *may* be joined in one action as defendants" if "any right to relief" arises out of "the same transaction, occurrence, or series of transactions and occurrences.") (emphasis supplied); 9-11-14 (a) (defendant "*may* [join] a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim") (emphasis supplied); see also OCGA § 9-11-19 (a) (1) (where "complete relief" can be obtained as between existing parties, joinder of third parties is unnecessary).

Here, the plaintiff obtained "complete relief" from the City in the form of a settlement made in view of the City's liability for the acts of

a subsequently negligent treating physician. Neither the plaintiff nor the City was obligated to join Fortenberry as a party to the original action, however. Indeed, it would have been reversible error for the court to order such a joinder. See *Ferguson v. Carver*, 257 Ga. App. 849, 850-851 (1) (572 SE2d 700) (2002) (where plaintiff's injuries are the result of two separate collisions, joinder of second tortfeasor amounts to abuse of discretion); see also *Posey v. Med. Center-West*, 257 Ga. 55, 59 (354 SE2d 417) (1987) (plaintiff's release of one tortfeasor does not discharge others unless so agreed).

2. Fortenberry argues that Georgia law does not allow an initial tortfeasor to seek contribution from a subsequent treating physician because the two are not joint tortfeasors. We agree. Nevertheless, given the longstanding entwinement of our law of contribution with that of indemnity, a summary of the former is in order.

Georgia's contribution statute reads in relevant part as follows:

(a) Except as provided in Code Section 51-12-33 [allowing apportionment of fault on the basis of a plaintiff's compara-tive negligence], where a tortious act does not involve moral turpitude, contribution among *several* trespassers may be enforced just as if an action had been brought against them jointly. Without the necessity of being charged by action or judgment, the right of a *joint* trespasser to contribution from another or others shall continue unabated and shall not be lost or prejudiced by compromise and settlement of a claim or claims. . . .

(b) If judgment is entered jointly against several trespassers and is paid off by one of them, the others shall be liable to him for contribution.

(Emphasis supplied.) OCGA § 51-12-32.

At English common law, contribution claims were barred only where the tortfeasor seeking contribution had acted wilfully and consciously. See *Marchman & Sons, Inc. v. Nelson*, 251 Ga. 475, 476-477 (306 SE2d 290) (1983) (summarizing history of contribution statute); *Greyhound Lines v. Cobb County*, 681 F2d 1327, 1332 (II) (11th Cir. 1982). Late nineteenth-century and early twentieth-century Georgia law adapted the English rule in two complementary ways. First, it refused to assist intentional wrongdoers, allowing contribution only between those tortfeasors whose wrongful acts did not involve "moral turpitude." See *Greyhound Lines*, supra, 681 F2d at 1332 (II); OCGA § 51-12-32 (a). Second, "[o]ur courts developed a rule recognizing a right of contribution in [a] joint tortfeasor who was merely passive in his conduct from another joint tortfeasor who was

active in his conduct." (Citations omitted.) *Marchman*, supra, 251 Ga. at 476. This Court held in 1911, for example, that a railway whose employee was electrocuted by contact with a worn cable had no rights in either contribution or indemnity against the utility that owned, placed, and maintained the cable because the railway's own failure to inspect made it "actively," and not "passively," negligent. *Central of Ga. R. Co. v. Macon R. &c. Co.*, 9 Ga. App. 628, 632 (3) (71 SE 1076) (1911); see also *Peacock Constr. Co. v. Montgomery Elevator Co.*, 121 Ga. App. 711, 713 (2) (175 SE2d 116) (1970). In a later proceeding in the same case, however, the Supreme Court of Georgia used the active-passive distinction for the diametrically opposed purpose of allowing the railway to proceed against the utility. *Central of Ga. R. Co. v. Macon R. &c. Co.*, 140 Ga. 309, 318 (78 SE 931) (1913) (railway would have right of contribution *and* indemnity when it "was not a mere joint tortfeasor in the sense that it had been guilty with the [utility] of the same or like negligence"); see also *Peacock Constr. Co.*, supra, 121 Ga. App. at 713 (2); *Standard Oil Co. v. Mt. Bethel United Methodist Church*, 230 Ga. 341, 344-345 (6) (196 SE2d 869) (1973). As late as 1980, our Supreme Court was still using the active-passive distinction when it held that the "active" negligence of a co-defendant who dropped a gun which went off, injuring the plaintiff, barred an indemnity action against the gun manufacturer for defective design. *Colt Indus. Operating Corp. v. Coleman*, 246 Ga. 559, 560-561 (272 SE2d 251) (1980).

Commentators have long criticized the active-passive distinction on the ground that its all-or-nothing approach obstructs the principle of comparative fault. See, e.g., *Greyhound Lines*, supra, 681 F2d at 1332-1333 (II) (allowing "actively" negligent party to seek contribution); Prosser and Keeton on Torts (5th ed. 1984, with 1988 Supplement), § 51, p. 343, nn. 19, 20; Dobbs, The Law of Torts (2000), § 386, p. 1079. Indeed, one commentator declared as early as 1973 that the "distinction is no longer valid in Georgia." Note, Torts — Distribution of Judgment Among Tortfeasors — An Approach of Fairness Among the Parties, 24 Mercer L. Rev. 697, 701 (1973).

In 1983, citing this last source, the Supreme Court of Georgia noted for the first time that the 1933 Code had not taken up the active-passive distinction, implementing instead the modern rule allowing contribution between all tortfeasors against whom a joint judgment had been entered. *Marchman*, supra, 251 Ga. at 476, citing Code 1933, § 105-2012. Amendments in 1966 and 1972 extended this right of contribution by permitting recovery "without the necessity of a judgment in the underlying suit." Id. at 477. The specific result in *Marchman* was a reversal of this Court's finding that contribution between joint tortfeasors was impossible when the underlying tort suit had been dismissed with prejudice. Id. at 478. The *Marchman*

court held that even in the absence of a judgment, one tortfeasor could seek contribution from another as long as the first could prove that the second was indeed a joint tortfeasor. Id. at 477, n. 4; see also *Big Canoe Corp. v. Moore & Groover, Inc.*, 171 Ga. App. 654, 657 (2) (320 SE2d 564) (1984); *Southern R. Co. v. Brewer*, 122 Ga. App. 292, 293 (176 SE2d 665) (1970). In the course of construing a different statute, moreover, our Supreme Court held in 1996 that "contribution will not lie in the absence of joint or joint and several liability." *Weller v. Brown*, 266 Ga. 130 (464 SE2d 805) (1996), citing OCGA § 23-2-71 (contribution available where defendants "are equally bound" and "one has paid more than his share").

The case before us involves what are indisputably independent rather than joint tortfeasors. As a subsequent tortfeasor, of course, Fortenberry would have no right to contribution from the City, since he did not cause the earlier harm to the plaintiff and cannot be held liable for it. See *Phillips v. Tellis*, 181 Ga. App. 449, 451 (352 SE2d 630) (1987). We note that our contribution statute creates a right as between "*several*" tortfeasors, and goes on to refer to "joint" tortfeasors only in the context of assuring that this right "shall not be lost or prejudiced" by settlement of a claim. (Emphasis supplied.) OCGA § 51-12-32 (a). The 1987 amendment to the statute, however, emphasized the linkage between joint tortfeasor status and contribution when it replaced earlier language concerning "the right of contribution from another or others" with the statement that "the right of a *joint* trespasser to contribution from another or others" shall not be lost by settlement of a claim. Compare Ga. L. 1972, p. 133 with Ga. L. 1987, p. 921 (emphasis supplied), OCGA § 51-12-32 (a). In sum, then, we hold that the City has no right of contribution against Fortenberry. See *United States Lines v. United States*, 470 F2d 487, 491-492 (5th Cir. 1972) (barring contribution action against subsequently negligent treating physician on ground that defendants are not joint tortfeasors).

3. Fortenberry also argues that the Legislature's failure to extend the principle of comparative fault explicitly to cases involving initial and subsequent tortfeasors bars this Court from applying that principle here in the form of a right to implied indemnity. We disagree.

The same nineteenth-century precedents creating a right of contribution between some tortfeasors also preserved a defendant's right to pursue indemnity claims against third parties. The indemnity subsection of the current version of the statute, first passed in 1863, reads as follows:

> Without the necessity of being charged by an action or judgment, the right of indemnity, express or implied, . . .

shall not be lost or prejudiced by compromise and settlement of a claim or claims for injury to person or property or for wrongful death and release therefrom.

OCGA § 51-12-32 (c); see also *DeKalb County v. Lenowitz*, 218 Ga. App. 884, 888-889 (4) (463 SE2d 539) (1995).

After *Marchman*, Georgia law continues to recognize two broad categories of indemnity: as created by contract, as between a surety and a debtor; and under the common law of vicarious liability, as between principals and agents. See, e.g., *Nguyen v. Lumbermens Mut. Cas. Co.*, 261 Ga. App. 553, 557 (2) (583 SE2d 220) (2003) (enforcing indemnity agreement signed by wife, but refusing to find that husband had common law duty to indemnify); *Crawford v. Johnson*, 227 Ga. App. 548, 552-553 (2) (c) (489 SE2d 552) (1997) (executor has rights of contribution and indemnity against employer law firm arising from employee's negligence); compare *State Farm Fire &c. Co. v. American Hardware Mut. Ins. Co.*, 224 Ga. App. 789, 793-795 (4) (a), (b) (482 SE2d 714) (1997) (applying *Marchman* to indemnity law, but also citing the old active-passive distinction in passing). The specific question whether an initial tortfeasor can obtain some form of indemnity against a subsequently negligent treating physician, however, has not been addressed by either the Georgia General Assembly or the Georgia courts since the last significant amendment to the indemnity statute was passed in 1972. See OCGA § 51-12-32 (c); Ga. L. 1972, p. 134, § 1 (granting indemnity right to settling defendants).

As the City points out, most jurisdictions considering the question posed by this case have authorized a right of "partial" or "equitable" indemnity, although the cases are anything but unanimous. See generally 72 ALR4th 231 (1989) (summarizing cases allowing or barring contribution and indemnity actions by initial tortfeasor against subsequent treating physician). Those courts which have refused to recognize an action in partial indemnity have often justified their decision by pointing to their legislature's apparent refusal to apply principles of comparative negligence to the equitable apportionment of fault between independent tortfeasors. See, e.g., *Kemper Nat. P & C Cos. v. Smith*, 419 Pa. Super. 295, 307-309 (615 A2d 372) (1992).

We agree that any right of partial or implied indemnity against a subsequent treating physician must complement statutory action (or inaction) on the matter of comparative fault. Discerning legislative intention from decades of interplay between case law and statute is hardly a simple matter, however. We know that soon after this Court first articulated the active-passive distinction in 1911, the Supreme Court of Georgia employed that same distinction not only to

distinguish one joint tortfeasor from another, but also to allow a right of indemnity between them. See *Central of Ga.*, supra, 9 Ga. App. at 632 (3); *Central of Ga.*, supra, 140 Ga. at 318. Though this was apparently binding precedent until 1980, the Supreme Court reminded us in 1983 that the 1933 Code, the first passed after the *Central of Ga.* cases, refused to encode such a distinction. Compare *Colt Indus.*, supra, 246 Ga. at 560 with *Marchman*, supra, 251 Ga. at 476. We also find it relevant that the 1987 legislature empowered triers of fact to apportion damages "according to the degree of fault of each person," although this change was made only in those cases in which the plaintiff was "to some degree responsible for the injury or damages claimed." OCGA § 51-12-33 (a); Ga. L. 1987, p. 921.

As the Fifth Circuit explained in a 1972 review of much of this rocky legal landscape, the equities in cases such as the one before us strongly favor the initial tortfeasor, who has had "not the slightest opportunity" to protect itself against the negligence of the subsequent treating physician. See *United States Lines*, supra, 470 F2d at 491. Given Georgia's participation in the modern trend over many years toward a comparative fault system — extending the principle to "active" joint tortfeasors in 1933, and to cases involving a plaintiff's contributory negligence in 1987 — we cannot assume that the legislature's inaction since then amounts to a refusal to extend that principle to the exceptional case in which an initial tortfeasor, though producing an injury distinct from that created by his successor in negligence, and though liable for the second injury nonetheless, seeks some form of relief from that successor. It must be allowed, moreover, that the task of apportioning damages is substantially simpler in cases involving independent tortfeasors like the City and Fortenberry than in those involving a plaintiff's contributory negligence.

In light of our Supreme Court's emphasis on the distance between Georgia's modern statutory law of indemnity and its older antecedents, then, and considering that it would be unjust to penalize the City for its promptitude in making the plaintiff whole, we hold that an initially negligent tortfeasor has a right to partial indemnity against a subsequently negligent treating physician. See *United States Lines*, supra, 470 F2d at 493 (defendant settling under compulsion of liability for consequences of physician's negligence does not have right of contribution, but does have right of indemnity).

*Judgment reversed. Andrews, P. J., and Ellington, J., concur.*

*Gray, Rust, St. Amand, Moffett & Brieske, Harvey S. Gray*, for appellant.

*Huff, Powell & Bailey, Randolph P. Powell, Jr.*, for appellee.