A08A2440. URBAN SERVICES GROUP, INC. v. THE ROYAL GROUP, INC.

(671 SE2d 838)

ANDREWS, Judge.

In the course of this action for contribution and indemnity by Urban Services Group, Inc. against The Royal Group, Inc., the trial court granted summary judgment to Royal on the ground that Royal's janitorial contract did not require it to clear the ice from the courthouse sidewalk on which the plaintiff in the underlying tort suit slipped and fell. We hold that Royal's contract unambiguously provided for its removal of all ice accumulations from the courthouse sidewalks, but that the record before us does not otherwise permit a resolution of the parties' responsibilities as a matter of law. We therefore reverse and remand for further proceedings.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." (Citations and punctuation omitted.) *Walker v. Gwinnett Hosp. System*, 263 Ga. App. 554, 555 (588 SE2d 441) (2003). A trial court's grant of summary judgment is reviewed de novo on appeal, construing the evidence in the light most favorable to the nonmovant. *Ethridge v. Davis*, 243 Ga. App. 11, 12 (530 SE2d 477) (2000). Once the party moving for summary judgment has made a prima facie showing that it is entitled to judgment as a matter of law, the nonmovant must then come forward with rebuttal evidence sufficient to show the existence of a genuine issue of material fact. *Weldon v. Del Taco Corp.*, 194 Ga. App. 174 (390 SE2d 87) (1990).

So viewed, the record shows that Carolyn Fryer sued Urban for injuries suffered when Fryer fell on an icy sidewalk approaching the federal courthouse in Columbus, on the morning of January 7, 2004. Fryer alleged that the ice had formed as a result of landscape sprinklers operating overnight during freezing temperatures. At the time of Fryer's fall, Urban had a contract with the General Services Administration (GSA) to supervise the maintenance of the courthouse. Urban's president testified that although his company was responsible for maintaining the sprinkler heads, Urban was not responsible for the system's timers or activation. Aesthetic Landscape Services, Inc. also had a contract with the GSA to provide landscaping services for a period apparently ending before Fryer's accident and not including sprinkler operation or maintenance.

Royal had its own contract with the GSA to provide janitorial services at the courthouse. The GSA-Royal contract included the following provision:

*Snow Removal Requirements.* . . . When snow and ice conditions exist, remove accumulations from entrances, steps, landings and sidewalks. When these conditions exist at least (2) hours prior to opening the building, accumulations shall be removed before the building occupants report to work. [Royal] shall continue to provide snow and ice removal throughout the workday as necessary for accessibility and/or to eliminate hazards. . . . **WORK DESCRIBED ABOVE IS A PART OF THE BASIC CONTRACT**.

The contract also provided that Royal "shall arrange for satisfactory supervision of this contract work"; that "[i]t is the policy of GSA that Government direction or supervision of [Royal] employees[,] directly or indirectly, shall not be exercised"; and that Royal and its subcontractors "shall . . . hold the Government harmless for any action or omission on their part or that of their employees or subcontractors[ ] which results in illness, injury[,] or death."

On the morning of January 7, 2004, freezing temperatures and icy conditions existed at the courthouse, but Royal employees did not arrive for work on that day until 9:00 a.m. and did not inspect the area for ice before Fryer slipped and fell on the sidewalk. After Urban settled with Fryer, it sued Royal and Aesthetic Landscape for contribution and indemnity. Urban later dismissed Aesthetic Landscape with prejudice. The remaining parties filed cross-motions for summary judgment, and the trial court granted Royal's motion on the ground that its contract with GSA exonerated it from taking any action concerning ice formed by the action of a sprinkler system at freezing temperatures. This appeal followed.

1. Urban contends that Royal assumed responsibility for clearing all ice and snow conditions at the courthouse in its contract with the GSA. We agree.

(a) As adopted by the Supreme Court of Georgia, see *Huggins v. Aetna Cas. & Surety Co.*, 245 Ga. 248, 249 (264 SE2d 191) (1980), Section 324A of the Restatement of Torts (Second) provides:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if (a) *his failure to exercise reason-*

*able care increases the risk of such harm, or* (b) *he has undertaken to perform a duty owed by the other to the third person, or* (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

(Emphasis supplied.)

We reject Royal's contention that only affirmative acts, as opposed to mere omissions, can give rise to liability to third parties. See Comment b, Section 324A ("any undertaking to render services to another," including a "failure to exercise reasonable care to complete it, or to protect the third person when he discontinues it," can give rise to liability). And it is undisputed that Royal did not inspect the sidewalks around the courthouse for ice on the morning Fryer was injured and that its failure to do so "increase[d] the risk" that Fryer would slip and fall. Section 324A. The first question remaining, then, is whether Royal had a duty to prevent the icy condition.

(b) "Whenever the language of a contract is plain, unambiguous, and capable of only one reasonable interpretation, no construction is required or even permissible, and the contractual language used by the parties must be afforded its literal meaning." (Footnote omitted.) *First Data POS v. Willis*, 273 Ga. 792, 794 (2) (546 SE2d 781) (2001).

The contract term "snow and ice" is not ambiguous so as to require the application of some rule of contract construction resulting in the term's limitation to accumulation by precipitation. Neither the common meaning of the term "accumulation" nor the remainder of the contract provision supports such a procedure. Nor is it sensible to interpret the term as mandating ice removal only when snow was also present, since this would relieve Royal of removing accumulations resulting from sleet or freezing rain. On the contrary, the express purpose of the unambiguous contract provision quoted above was to delegate responsibility for clearing snow and ice conditions to Royal, however these conditions occurred. See *Margolin v. New York Life Ins. Co.*, 32 NY2d 149, 153-154 (297 NE2d 80) (1973) (owner of the building where a plaintiff fell on ice was entitled to indemnification from management company when the parties' contract expressed the parties' intention to have the management company assume the risk of liability concerning the removal of snow and ice from property sidewalks).

Urban had no responsibility for activating or maintaining the sprinkler system, moreover, and there is no evidence that the system malfunctioned such that someone other than Royal might be responsible for the resulting icy condition. Compare *Espinal v. Melville Snow Contractors*, 98 NY2d 136, 141-142 (773 NE2d 485) (2002) (reversing denial of contractor's motion for summary judgment

where contract for snow removal delegated responsibility for detecting icy condition to owner); *Laskowski v. Manning*, 325 Mass. 393, 397-399 (91 NE2d 231) (1950) (even where lessees owed a duty under the lease to remove snow and ice from sidewalks, the owner could be held responsible for a building sprinkler malfunction when it maintained and controlled the sprinkler system and when its runoff formed the sidewalk ice on which the plaintiff fell).

Given that Royal had an unambiguous contractual duty to clear the sidewalk of the ice on which Fryer fell, and that its failure to perform this duty increased the risk that Fryer would be injured, the trial court erred when it granted summary judgment to Royal.

2. Questions remain, however, concerning the extent to which Urban may recover either contribution or indemnity from Royal.

Urban has sought contribution under the theory that it and Royal are joint tortfeasors. See OCGA § 51-12-32 (a) (joint tortfeasor's right of contribution "shall not be lost or prejudiced by compromise and settlement of a claim"); *City of College Park v. Fortenberry*, 271 Ga. App. 446, 450 (2) (609 SE2d 763) (2005) (even in the absence of a judgment, a joint tortfeasor can seek contribution from another "as long as the first [can] prove that the second [is] indeed a joint tortfeasor," citing *Marchman & Sons, Inc. v. Nelson*, 251 Ga. 475 (306 SE2d 290) (1983)). Urban also seeks indemnity from Royal. See OCGA § 51-12-32 (c) (right of express or implied indemnity "shall not be lost or prejudiced by compromise and settlement of a claim"); *City of College Park*, 271 Ga. App. at 451 (3) (Georgia law recognizes "two broad categories of indemnity: as created by contract, as between a surety and a debtor; and under the common law of vicarious liability, as between principals and agents.").

The record before us is inadequate to resolve the comparative liabilities of Urban and Royal as a matter of law. The GSA-Royal contract appears to indemnify the government, rather than its agents, from any harm proximately caused by Royal's negligence. See *Satilla Community Svc. Bd. v. Satilla Health Svcs.*, 275 Ga. 805 (573 SE2d 31) (2002) (rejecting claim for so-called "implied contractual indemnification"). The same contract also provided, however, that "Government direction or supervision of [Royal] employees[,] directly or indirectly, shall not be exercised." As we have already noted, moreover, Urban was apparently responsible for maintaining the sprinkler heads only, and it remains unclear who was responsible for activating the sprinkler system on the day in question and whether that activation was the result of a malfunction. Because the answers to factual questions such as these will dictate the extent, if any, of Urban's recovery from Royal, we leave them to further proceedings consistent with this opinion.

3. Urban's remaining assertions of error are moot.

*Judgment reversed and case remanded with direction. Ruffin, P. J., and Bernes, J., concur.*

DECIDED DECEMBER 18, 2008 — 

*Drew, Eckl & Farnham, Brian T. Moore,* for appellant.

*Brown, Readdick, Bumgartner, Carter, Strickland & Watkins, Terry L. Readdick, Garret W. Meader,* for appellee.