**FOURTH DIVISION**
**DOYLE, P. J.,**
**PHIPPS, P. J., and ANDREWS, J.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**November 29, 2012**

# In the Court of Appeals of Georgia

A12A1593. DOUGLAS ASPHALT COMPANY et al. v. GEORGIA
          DEPARTMENT OF TRANSPORTATION.

PHIPPS, Presiding Judge.

Douglas Asphalt Company, Joel Spivey, and Kyle Spivey (collectively, Douglas Asphalt), as assignees of Applied Technical Services, Inc. (ATS), filed a complaint for indemnity and contribution against the Georgia Department of Transportation (GDOT) seeking payment of damages a jury awarded Douglas Asphalt in a separate lawsuit filed by Douglas Asphalt against ATS. GDOT moved to dismiss on the ground of sovereign immunity. The trial court granted the motion, and Douglas Asphalt appeals. For the reasons that follow, we affirm.

The complaint filed in August 2010 by Douglas Asphalt against GDOT alleged that in 2003, GDOT contracted with ATS for ATS to test core samples of asphalt from milling and resurfacing road work projects earlier performed by Douglas

Asphalt. Douglas Asphalt alleged that the purpose of the testing was to determine the amount of hydrated lime which had been placed in the asphalt mixture before Douglas Asphalt applied the mixture to the roadway. Douglas Asphalt alleged that GDOT had instructed ATS to perform a particular type of testing procedure, which GDOT falsely claimed was GDOT's standard protocol, and despite GDOT's knowledge that another testing service had refused to perform such testing because it was unreliable. Douglas Asphalt further alleged that during the testing process, an ATS chemist who notified GDOT of concerns about the procedure's accuracy and validity, was instructed by GDOT to continue testing the samples utilizing the particular testing procedure GDOT had designated. Douglas Asphalt alleged that based on the test results, GDOT declared Douglas Asphalt in default on more than 100 projects and removed it (Douglas Asphalt) from GDOT's "bidders list."

It is undisputed that in October 2006, Douglas Asphalt sued ATS, among others (but not GDOT), in federal court, and in October 2009, obtained a jury verdict of $150 million against ATS related to ATS's testing of the samples.[1] Before the jury had returned the verdict, however, Douglas Asphalt and ATS entered into an

---

[1] See *Douglas Asphalt Co. v. Qore, Inc.*, 2010 U. S. Dist. LEXIS 50141 (SD Ga. May 20, 2010).

2

agreement wherein ATS agreed to pay Douglas Asphalt $1 million and to assign its right to sue GDOT in the event the jury rendered a verdict in Douglas Asphalt's favor.

In October 2010, GDOT simultaneously filed an answer and a motion to dismiss the complaint based on sovereign immunity. Douglas Asphalt filed a response to the motion, and on September 1, 2011, the trial court denied GDOT's motion to dismiss. But on September 20, 2011, a federal appeals court overturned the jury's $150 million verdict.[2] GDOT filed a motion for reconsideration in this case, asking (again) for dismissal of the complaint. Douglas Asphalt responded, contending that despite the fact that the $150 million verdict against ATS in federal court had been overturned, it (Douglas Asphalt) retained other assigned claims against GDOT. On February 14, 2012, the trial court granted GDOT's motion to dismiss based on sovereign immunity. It is from this order that Douglas Asphalt appeals.

> The Georgia Tort Claims Act sets forth exceptions to a state agency's sovereign immunity, which are subject to certain limitations; and a plaintiff bears the burden of establishing that a state agency's conduct is excepted from sovereign immunity. Moreover, we review a trial court's grant of a motion to dismiss on sovereign-immunity grounds

---

[2] See *Douglas Asphalt Co. v. Qore, Inc.*, 657 F3d 1146 (11th Cir. 2011).

de novo, bearing in mind that a motion to dismiss may be granted only when a plaintiff would not be entitled to relief under any set of facts that could be proven in support of its claim. Nevertheless, when the trial court determines a jurisdictional issue based upon conflicting factual issues, on appeal, the court's finding on a factual issue will be sustained if there is evidence which authorizes the finding.[3]

On appeal, Douglas Asphalt contends that the trial court erred in dismissing the complaint for indemnity and contribution based on sovereign immunity because GDOT was liable to Douglas Asphalt, as assignee of ATS, for breach of contract in the instant suit; and because GDOT could have been liable to Douglas Asphalt for negligence claims in the federal case.

1. "Georgia law defines indemnity as the obligation or duty resting on one person to make good any loss or damage another has incurred by acting at his request or for his benefit."[4] Georgia law recognizes two broad categories of indemnity: as created by contract and as under the common law of vicarious liability.[5] Only the

---

[3] *Sadler v. Dept. of Transp.*, 311 Ga. App. 601, 603 (716 SE2d 639) (2011) (punctuation and footnotes omitted).

[4] *Lanier at McEver v. Planners & Engineer's Collaborative*, 284 Ga. 204, 206 (2) (663 SE2d 240) (2008) (citation and punctuation omitted).

[5] See *Urban Svcs. Group v. Royal Group*, 295 Ga. App. 350, 353 (2) (671 SE2d 838) (2008).

former is involved here; Douglas Asphalt does not assert that ATS was an agent or employee of GDOT for purposes of a claim for vicarious liability.[6]

"The doctrine of sovereign immunity, also known as governmental immunity, protects all levels of governments from legal action unless they have waived their immunity from suit."[7] "The defense of sovereign immunity is waived as to any action ex contractu for the breach of any written contract … entered into by the state or its departments and agencies."[8]

In terms of liability for indemnity as created by contract, "[u]nless the words of a contract explicitly show an agreement to indemnify another party for his own negligence, such an agreement cannot be implied."[9] "Georgia law is very clear that

[6] See *Emergency Professionals of Atlanta v. Watson*, 288 Ga. App. 473, 475-477 (1), (2) (2007) (alleged tortfeasor not liable for acts of an independent contractor); compare *Fieldstone Center v. Stanley*, 216 Ga. App. 803, 805 (3) (456 SE2d 61) (1995).

[7] *Cameron v. Lang*, 274 Ga. 122, 126 (3) (549 SE2d 341) (2001) (footnote omitted); *Watts v. City of Dillard*, 294 Ga. App. 861, 862 (1) (670 SE2d 442) (2008); *Weaver v. City of Statesboro*, 288 Ga. App. 32, 33 (1) (653 SE2d 765) (2007).

[8] *Wilson v. Bd. of Regents &c. of Ga.*, 262 Ga. 413, 414 (2) (419 SE2d 916) (1992) (citation and punctuation omitted).

[9] *SRG Consulting v. Eagle Hosp. Physicians*, 282 Ga. App. 842, 845 (2) (640 SE2d 306) (2006) (punctuation and footnote omitted); *Emergency Professionals of Atlanta*, supra at 477 (unless a contract for indemnification explicitly and expressly states that the negligence of the indemnitee is covered, this appellate court will not

5

a contract does not indemnify the indemnitee against its own negligence unless it says so. . . ."[10]

Douglas Asphalt contends that a written contract existed between GDOT and ATS to test the samples, and that GDOT breached that contract by falsely representing to ATS that the testing procedure GDOT instructed ATS to perform was a standard operating procedure of GDOT. Douglas Asphalt pointed to multiple documents in the record purporting to show the existence of a contract – a facsimile transmittal dated August 14, 2003 wherein one ATS employee directed another ATS employee to review attached documents concerning the procedure for testing the samples; an e-mail dated August 15, 2003 wherein ATS provided GDOT with its rates for the testing services; e-mails from August 15, 2003 to July 28, 2006 between ATS and GDOT employees regarding discrepancies in test results, GDOT's desire for additional testing, the cost of additional testing, test results, and the payment of invoices; and data sheets.

---

interpret such an agreement as a promise to save the indemnitee from his own negligence).

[10] *United Parcel Svc. v. Colt Security Agency*, 296 Ga. App. 815, 816 (1) (676 SE2d 22) (2009); *Satilla Community Svc. Bd. v. Satilla Health Svcs.*, 275 Ga. 805, 806-807 (1) (573 SE2d 31) (2002) (rejecting implied contractual indemnification claim); *Urban Svcs. Group*, supra.

6

"[A] valid written contract may be formed when there are multiple signed, contemporaneous agreements between the parties which demonstrate their intent to enter into a binding contract and the individual documents, considered together, include all of the necessary terms of a contract."[11] In this case, however, the documents referenced above are not final and signed contemporaneous agreements between the parties.[12]

Even if a written contract existed, GDOT's sovereign immunity would not be waived because there are no words explicitly showing an agreement to indemnify.[13] Douglas Asphalt failed to show the existence of a written indemnity provision so as to demonstrate a waiver of GDOT's sovereign immunity, and the trial court properly granted GDOT's motion to dismiss as to this issue.[14]

---

[11] *Bd. of Regents of the Univ. System v. Doe*, 278 Ga. App. 878, 881 (1) (a) (630 SE2d 85) (2006) (citation omitted).

[12] See *Ga. Dept. of Community Health v. Data Inquiry, LLC*, 313 Ga. App. 683, 686-687 (1) (b) (722 SE2d 403) (2012); cf *Bd. of Regents of the Univ. System*, supra 878-885 (1).

[13] *SRG Consulting*, supra; *Emergency Professionals of Atlanta*, supra; *United Parcel Svc.*, supra; *Satilla Community Svc. Bd.*, supra; *Urban Svcs. Group*, supra.

[14] See *Ga. Dept. of Community Health*, supra.

2. "The right to contribution relates only to joint tortfeasors,"[15] and "[a]n alleged joint tortfeasor who cannot be held liable on the underlying tort claim cannot be held liable for contribution. . . ."[16] Here, the claim for contribution against GDOT, made by Douglas Asphalt as assignee of ATS, was necessarily premised on GDOT's status as a joint tortfeasor (with ATS) for liability to Douglas Asphalt.[17]

Under the Georgia Tort Claims Act, the State's sovereign immunity is waived for lawsuits seeking contribution from the State on the ground that the State was a joint tortfeasor so long as the activity of the State that is alleged to make it a tortfeasor, and thus subject to a claim for contribution, does not fall within one of the exceptions to the waiver of sovereign immunity listed in OCGA § 50-21-24.[18]

Douglas Asphalt contends that OCGA § 50-21-24 does not except GDOT from liability for negligence claims, and thus, sovereign immunity was waived. Douglas

---

[15] *Greenhorne & O'Mara v. City of Atlanta*, 298 Ga. App. 261, 262 (679 SE2d 818) (2009) (punctuation and footnote omitted).

[16] *Ga. Ports Auth. v. Andre &c. Co.*, 262 Ga. App. 591, 596 (5) (a) (585 SE2d 883) (2003) (footnote omitted), rev'd on other grounds, *Hines v. Ga. Ports Auth.*, 278 Ga. 631 (604 SE2d 189) (2004).

[17] See *Greenhorne & O'Mara*, supra at 262.

[18] See *Dept. of Transp. v. Montgomery Tank Lines*, 276 Ga. 105 (575 SE2d 487) (2003).

8

Asphalt asserts that GDOT was negligent in instructing ATS to use a faulty testing procedure to evaluate the hydrated lime content of asphalt mixture used by Douglas Asphalt and in utilizing the results from that procedure as the basis for finding Douglas Asphalt in default, despite having been informed that the validity of the procedure had been questioned.

GDOT argues that it had no liability for ATS's actions because the actions fell within two exceptions set forth in OCGA § 50-21-24.

We need not reach the issue of whether Douglas Asphalt's claim for contribution fell within an exception to the State's tort liability set out in OCGA § 50-21-24, however, because the asserted claim by Douglas Asphalt against GDOT sounds in contract, not tort.[19] This is because the claim would have risen from GDOT's duties to ATS as defined by the alleged contract between GDOT and ATS.[20] As Douglas Asphalt states in its appellate brief: "The testing procedures were dictated by contract. . . ."

> In order to maintain an action ex delicto because of a breach of duty growing out of a contractual relationship, the breach must be shown to

---

[19] See *Keith v. Alexander Underwriters Gen. Agency*, 226 Ga. App. 838, 840 (2) (487 SE2d 673) (1997).

[20] Id.

have been a breach of duty imposed by law and not merely the breach of a duty imposed by the contract itself. If there is no liability except that arising out of a breach of the express terms of the contract, the action must be in contract, and an action in tort cannot be maintained.[21]

Indeed, Douglas Asphalt has not shown the existence of any duty imposed by law governing the performance of testing procedures to determine the amount of hydrated lime content in an asphalt mixture applied to roadways. The duty, if any, was created under the alleged contract between GDOT and ATS. And, as discussed in Division 1 (a),[22] because there was no written contract, GDOT's sovereign immunity was not waived. Accordingly, the trial court did not err in granting GDOT's motion to dismiss.

*Judgment affirmed. Doyle, P.J., and Andrews, J., concur.*

---

[21] *Bank South v. Harrell*, 181 Ga. App. 64, 67 (2) (351 SE2d 263) (1986) (citations and punctuation omitted).

[22] Supra.